D. H. WHEELER AND OTHERS, APPELLEES, v. THE CITY OF PLATTSMOUTH AND OTHERS, APPELLANTS.

1. **Cities of Second Class:** STREET BONDS: CONSTITUTIONAL LAW. Subdivision, XXXVIII, Section 31, of the act relating to cities of the second class is constitutional; and the authority to issue street bonds to contractors is not restricted by section 39 of the same act, nor is the issue of such bonds regulated by the provisions of the act of February 15, 1869.

2. ———: TAX FOR STREET IMPROVEMENTS. Cities of the second class cannot levy a tax for street improvements to exceed five mills on the dollar for any one year; and any tax for street improvements in excess of this amount is illegal and void.

3. ———: SCHOOL TAXES. Under the act of February 15, 1875, "relating to public schools in cities of the second class," the aggregate of school tax for all school purposes shall in no one year exceed one per cent upon all the taxable property of the district.

4. ———: FUNDING BONDS. Authority is given to cities of the second class to issue funding bonds, without having first submitted the question to a vote of the legal voters of the city.

5. ———: GENERAL INDEBTEDNESS. The *proviso* in subdivision XL, Section 31, of the act relating to cities of the second class—

"That the bonded indebtedness shall not, at any one time. exceed twenty per cent of the value of the real estate of such city, according to the assessment of the preceding year," is an independent proposition which relates to the entire bonded debt of the city, and therefore all bonds issued in excess of the amount so limited are without any authority of law and void.

APPEAL by defendant from a decree rendered by POUND, J., presiding in the district court for Cass county. The case is stated in the opinion.

*Sam M. Chapman* and *T. M. Marquett*, for appellant.

*John L. Webster* and *Ralph E. Gaylord*, for appellees.

GANTT, CH. J.

This is a suit in equity to enjoin the collection of certain taxes, and is brought into this court upon appeal. The several questions presented for determination will be considered in the order in which they appear in the pleadings.

I. It is complained that certain street bonds, bearing date December 13, 1873, were issued without authority of law and are void, and therefore the taxes levied to pay the same are illegal. These bonds were issued under sub-division XXXVIII of section 31 of the act relating to cities of the second class. It confers on the city council power " to issue, from time to time, street bonds to contractors, or other persons performing work or furnishing materials in said city, on such terms and in such manner as the council may provide." It is contended that this subdivision is unconstitutional because it contains no provision restricting the power of taxation as required by section 4, art. VIII of the constitution of 1867. Gen. Stat., 64. But it will be observed that the constitution does not prescribe the character of the restrictions which shall be imposed on this power of taxation. It is

left to legislative discretion to determine the character and extent of these restrictions; and as the legislature has fixed upon some limitation upon taxation by the act relating to cities of the second class, we think the ground taken in the argument on the part of the plaintiff is not tenable.

Section 32 provides that "before the city can make any contract for building bridges or sidewalks, *or for any work on streets,* or for any other works or improvements, an estimate of the cost thereof shall be made by the city engineer, and submitted to the council, and no contract shall be entered into for any works or improvements for a price exceeding such estimate"; and by subdivision II, of section 31, for opening, widening, and grading streets, the city is limited to a tax not exceeding five mills on the dollar of the assessed value of real estate within the corporate limits of the city.

These provisions of the act not only limit the power of taxation for grading streets to the estimate made by the city engineer, but also limit the power within five mills on the dollar of the assessed value of real estate. Whether these restrictions will as effectually guard the citizen against abuse of the power as others which might have been imposed, is a question for legislative consideration and not for the courts to determine; and therefore "it must be inferred that these were all the restrictions the legislature deemed important" or necessary, (Cooley on Const. Lim., 518,) and "we know of no rights conferred upon the courts to interfere with the exercise of a legislative discretion which the constitution has delegated to the law-making power." *Maloy v. Marietta,* 11 Ohio St., 639.

Again, subdivision XXXVIII gives the city council no authority to borrow money on the credit of the city; it merely confers on them the power to issue street bonds to contractors, and therefore the bonds can only

be issued for an existing debt, previously contracted. And the council can make no such contract for grading a street or for any other work or improvement until an estimate of such work is first made by the city engineer, and no contract shall be entered into for any such work for a price exceeding the estimate so made; and hence it seems quite clear that the issuing of such bonds cannot be restricted by sub-division XXXIX, which confers a general power to borrow money on the credit of the city upon certain conditions, nor come within the provisions of the act of February 15, 1869, which enables counties, cities, and precincts to borrow money on their bonds to aid in the construction of internal improvements. Gen. Stat., 448.

But, again, section 18, art. XVI of the new constitution, which was adopted, declares that: " If this constitution be adopted, the existing constitution shall cease in all its provisions on the first day of November, A.D. 1875." The old constitution did, then, *cease in all its provisions*, and must be considered, except as to transactions past and closed, as if it never existed; therefore, what authoritative effect can it now have in determining the question, whether a statute is or is not constitutional ? It is said that " the general rules of interpretation are the same, whether applied to statutes or constitutions." Sedg. Stat. & Const. L., 19. And in *Key v. Goodwin*, 4 Moore & Payne, 351, the rule is stated to be that " a statute repealed is as completely obliterated from the records of Parliament as if it had never passed, and that it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded while it was an existing law." *Johnson v. Hahn*, 4 Neb., 146. *Ex parte McCardle*, 7 Wallace, 514. The statute in question is not, nor is it claimed to be, repugnant to the new constitution.

20

II.   It is complained that the city has levied a five mill tax for street improvements without any authority of law, and that such tax is illegal and void.   In the discussion of the question raised by this complaint, it may first be remarked that, as the taxing power is vested in the legislature, and as it is the exclusive province of the legislature to apportion and direct the assessment of taxes, no property can be lawfully taxed without legislative authority; and hence there must not only be legislative authority shown for every levy of taxes, but the method prescribed by the legislature for the assessment of property and levy of taxes must be pursued.   *Turner v. Althaus et. al.*, 6 Neb., 54.   *State v. Lancaster Co.*, 4 Neb., 540.   *Clark v. Davenport,* 14 Iowa, 498.   *Burlington v. Kellar*, 18 Iowa, 65.   Cooley on Const. Lim., 518.   2 Kent Com., 299.

Subdivision II, section 31, of the "act to incorporate cities of the second class and define their powers," authorizes for street improvements assessments on property within the corporate limits of the city, not exceeding five mills on the dollar for any one year.   This is the extent of the authority given to levy taxes for street improvements, and the bonds for the street improvements must be paid out of this five mill tax; but in addition to the levy so authorized by law, the city council levied a five mill tax "for the payment of principal and interest on three street bonds issued for work done on Chicago avenue."   This additional levy for street improvements we think is clearly without authority of law.   For, as the authority to levy taxes for street improvements is, by subdivision II, fixed at a certain rate or per centage on the assessed value of property within the city limits, the power to levy other taxes for the same purposes is not to be implied from the fact that there is authority given to provide for a sinking fund to pay at maturity the bonded indebtedness of the city.   Cooley on Taxa-

tion, 210. *Leavenworth v. Norton*, 1 Kan., 432. If the limit upon the taxing power of the city for street improvements as fixed by subdivision II were to be disregarded, then, indeed, it would make no difference how strongly the legislature may inhibit excessive taxation, for the city council might, by resorting to the power to make contracts, impose upon the tax-payers a tax unlimited in amount or duration. *United States v. Burlington*, 2 Am. L. Reg., 396.

III. It is complained that the city council levied taxes for school purposes largely in excess of the amount authorized by law, and that all such excess of taxes is illegal and void. They levied a tax of twenty-four mills for general school purposes, but distributed the same for raising school funds as follows : For payment on high school furnace bond one-half mill; for payment on high school bonds five and one-half mills; for support of schools five and three-fourths mills; for teachers' wages four and one-half mills, and for sinking fund seven and three-fourths mills.

Now, section 26 of the act of February 25, 1875, "relating to public schools in cities of the second class," Laws 1875, p. 208, provides that the "board of education shall annually, during the month of June, report to the city council an estimate of the amount of funds required for the support of the schools for the fiscal year next ensuing, the amount of funds required for the purchase of school sites, the erection and furnishing of school buildings, and *the payment of interest upon all school bonds issued for school purposes, and the creation of a sinking fund for the payment of such indebtedness,*" and if approved by the council they are required to levy and collect the necessary amount, the same as other taxes. But section 27 provides, "that the *aggregate* school tax shall, in no one year, exceed one per cent upon all the taxable property of the district."

The latter section fixes a positive limitation of taxes for the whole assemblage of subjects mentioned in the preceding section, and therefore, in the distribution of the taxes for the different purposes designated in section 26, the council cannot, in any one year, levy these taxes in the aggregate to exceed one per cent upon all the taxable property of the district. This is the extent of the power conferred, and it is said that " it is a familiar rule that in the execution of the power to tax, the municipalities must confine themselves closely within the power conferred." Cooley on Taxation, 257, and authorities cited.

It was, however, urged in the argument for defendants that the limitation upon taxation for school purposes, contained in section 27, refers only to the estimate of funds required for the support of the schools for the fiscal year next ensuing, and that this interpretation of the law may be inferred from sections 29, 30, and 31; but this position is not tenable, because the limitation is general in its operation, and refers with equal force to each one of the subjects mentioned in section 26, and not to any one in particular. Sections 29, 30, and 31 do not modify or affect this limitation, or give any authority to levy and collect any other or additional taxes; they simply provide the mode in which money may be borrowed upon bonds, and for the sinking fund mentioned in section 27.

IV.   It is charged that the city council, without any authority of law, by ordinance of June 14, 1873, issued certain bonds to fund indebtedness of the city, and that they have levied a two and one-half mill tax to pay interest on said bonds, and that such tax is illegal and void.

Subdivision XL of section 31 provides:   " For issuing bonds for the purpose of funding any and all indebted-

ness now existing, or hereafter created, of the city, now due or to become due." The only conditions imposed in the issue of such bonds are that they shall be payable in not less than ten years and not more than twenty years, and shall bear interest at a rate not exceeding ten per cent per annum, and shall not be appropriated for the purpose of funding the indebtedness at less than ninety cents on the dollar.

But subdivision XXXIX, which confers power "to borrow money on the credit of the city, and pledge the credit, revenue, and property of the city for the payment thereof," provides that no such money shall be borrowed "until the city council shall be instructed so to do by a majority of all the votes cast at an election held in such city for that purpose." Here is a complete restraint upon the power to borrow money until the council shall be instructed so to do by the majority of the votes cast at an election held for that purpose. It is therefore very clear that the legislature has made an obvious distinction between the power to issue funding bonds and the power to borrow money on the credit of the city. In the one case it has delegated the power to issue bonds without a vote of the people, and in the other it has required such vote before such power can be exercised at all.

It is not the province of the courts to pronounce such legislation, in regard to the powers of municipal corporations, void, because it may deem it imperfect or impolitic, for it is alone the province of the legislature to pass laws for the incorporation of cities and define their powers and duties; and for an abuse of this legislative discretion the only remedy is by an appeal to the legislature itself, unless the party complaining can rest his case upon some prohibition of the constitution, or some right secured by that instrument. *Turner v. Althaus et al*, supra.

But a different and more important question is pre-

sented for consideration by the latter proviso in subdivision XL of section 31. It provides "that the bonded indebtedness shall not at any one time exceed twenty per cent of the value of the real estate of such city, according to the assessment of the preceding year." Is this limitation general as to all indebtedness of the city? or does it relate only to the funding bonds? The language of the proviso is general in its terms; and includes "the bonded indebtedness" of the city, and is not restricted to funding bonds only. It is said that "a proviso in deeds or laws, is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate or the other be exercised unless in the case provided." *Voorhees v. Bank of U. S.*, 10 Peters, 471. And it is not necessarily limited in its effect to the section where it is found, but may extend to other sections, or to the whole act. *United States v. Babbitt*, 1 Black, 61. *Mechanics Bank Appeal*, 31 Conn., 72-3.

The proviso in question, it seems from the general language employed, must be construed as an independent proposition, which relates to the entire bonded debt, and is for the purpose of preventing an abuse of the taxing power. And if this restriction can be disregarded by the council, then the bonded debt of the city might be increased without limit, and by consequence taxation may be so increased as to become an intolerable burden, without remedy. This can be done by contracting debts in various ways, and by issuing funding bonds for such debts. But I think the proviso is a complete restriction on the power to issue such bonds; and it is a familiar principle that the officers of a municipal corporation cannot bind the municipality beyond the limits of the powers expressly granted.

It is said that "a corporate body is constituted of all the inhabitants within the corporate limits. The in-

habitants are the corporators. The officers of the corporation, including the legislative or governing body, are merely the public agents of the corporation. Their duties and their powers are prescribed by statute. Every one may therefore know the nature of these duties, and the extent of their power." *Clark v. Des Moines*, 2 Am. L. Reg., 156. And every person who contracts with the officers of a corporation must, at his peril, take notice of the limits of their powers.

Prof. Dwight· in his note to the case of *Gould v. Sterling*, 1 Am. L. Reg., 290, very justly observes that: "It seems very clear that no representations by an agent can ever establish the fact of an agency.  *  * If a person who is not in fact authorized represents that he has power to execute a promissory note for another, the instrument, so far as the supposed principal is concerned, is utterly void. The negotiability of the note will have no effect upon the question, as the inquiry turns upon the existence of the note itself. The term 'negotiability' presupposes the existence of an instrument made by a person having capacity and power to contract in that particular manner.  *  *  *  An agent can no more enlarge his powers by means of unauthorized representations than he can create them." And in the same case Justice Selden says that: " One who takes a negotiable promissory note or bill of exchange, purporting to be made by an agent, is bound to inquire as to the power of the agent." This principle applies to municipal officers, because they are only the agents of the corporators; and it is said in respect of them: "The true rule is, that the want of corporate power, or the want of authority in the municipal officers, cannot be supplied by their unauthorized acts or representations." Therefore, when they transcend the exact limits of the power granted, their act is inoperative and absolutely void. It is without authority. And in *The Town*

*of East Oakland v. Skinner*, 4 Otto, 258, it is said that: " Where there is a total want of authority to issue bonds, there can be no such thing as a *bona fide* holding."

Now, the record shows (and it is not controverted) that when the council, on the fourteenth of June, 1873, passed the ordinance to issue the bonds, the bonded debt of the city was then in excess of the twenty per cent of the value of the real estate of the city, according to the assessment of the preceding year. Therefore there was a total want of authority in the municipal officers of the city, acting as agents of the corporators, to issue the bonds. And having transcended the limits of the power granted, the bonds issued under this ordinance derive no force from the fact of their being negotiable in form; the act was unauthorized and inoperative, and the bonds are simply void.

The additional five-mill tax for street improvements; all the taxes for school purposes in excess of one per cent upon all the taxable property in the district, and the two and one-half mill tax to pay interest upon the funding bonds, levied for the year 1876, and also the three mill tax to pay interest on funding bonds; the taxes for school purposes in excess of one per cent upon the taxable property of the district; and the additional five mill tax for street improvements for the year 1877, must be enjoined and the injunction made perpetual; but as to all other taxes, the collection of which is asked to be enjoined by the plaintiffs in their petition, the injunction is dissolved and the petition dismissed. And it is further decreed that the bonds issued under the ordinance of June 14, 1873, in excess of the twenty per cent of the value of the real estate of the district, are void.

DECREE ACCORDINGLY.