THE BURLINGTON & MISSOURI RIVER RAILROAD COMPANY IN NEBRASKA, APPELLANT, v. THE BOARD OF COUNTY COMMISSIONERS OF LANCASTER COUNTY, AND LOUIS HELMER, TREASURER, APPELLEES.

1. Taxes for County Revenue: INFORMALITY IN THE LEVY DOES NOT INVALIDATE. Where in a levy of taxes for county revenue the several estimated objects of expenditure, and the rate for each, are set out in detail, instead of being grouped together under the single head of "general fund," as the statute contemplates, it is at most but a mere informality, in no way invalidating the tax, so long as the objects specified are those for which the commissioners are authorized to draw upon the general fund.

2. School District Taxes: CERTIFICATE OF COUNTY SUPERINTENDENT. A certificate from the county superintendent of schools to the county clerk, of an amount found by him to be due as between school districts, upon a division thereof, is sufficient to authorize the levy of a tax upon the property of the district or districts from which amount is found to be due.

APPEAL from Lancaster county. Tried below, before POUND, J.

T. M. Marquett, for appellant, cited Cooley on Taxation, 249, 253, 254. B. & M. v. Lancaster County, 4 Neb.,

293.   *Rice v. Walker*, 44 Iowa, 458.   *State v. Commissioners*, 21 Kan., 434.

*Mason & Whedon,* for appellees.

LAKE, CH. J.

This is an appeal from the judgment of the district court for Lancaster county.  The action was brought to enjoin the collection of certain taxes levied upon the plaintiff's real estate for the year 1877, which are claimed to have been illegally imposed.

Confining our inquiry to the points now made by the appellants counsel in his brief, there is but one species of the taxes complained of in the petition to be examined, viz:  a tax for a "poor house fund," so called, of two and a half mills on the dollar of the valuation.  The specific road tax of four dollars per quarter section having been enjoined as prayed, and no appeal from the order having been taken by the defendants, no question concerning it is left.  We will, therefore, pass directly to the poor house fund tax.

In the court below the case was sent to a referee for trial.  Testimony was taken and the referee's conclusions of fact and of law reported to the court, on which report the judgment complained of was rendered.  The testimony before the referee was not preserved by bill of exceptions and is not before us, therefore his findings of fact must pass unquestioned.

As to this poor house fund tax, the referee's finding of fact is in these words, viz:  "The levy of poor house fund tax in controversy, was made for purposes of expenditure in completion of payment of purchase price of the poor farm, and for improvements thereon, and also for the maintenance and support of paupers, as well those receiving outside relief as those received into said poor house.  The defendant levying but 7½ mills tax for the general fund, or 'for purposes of general county revenue,

including the support of the poor,' levied the additional or remaining 2½ mills by the name on their record of 'a poor house fund,' for the purpose of applying the same to the purposes above stated." And he found further, that what money had been realized from such levy had been so used.

The legal conclusion which he drew from this is, "that the poor house levy is good and valid. The law permitting a levy of 10 mills for general revenue, the county commissioners have in levying the 10 mills the sole jurisdiction and discretion, within that sum, to determine the rate to be levied, and the general purposes for which it shall be appropriated and expended." And this conclusion is clearly right. In making the levy there was no necessity for designating the particular uses to which the fund when raised was to be applied, the only limitation being as to the amount, and is in these words: "For ordinary county revenue, *including the support of the poor*, not more than ten mills on the dollar" valuation. Act of February 19th, 1877, sec. 2, Laws 1877, page 45.

The term "poor house fund," is not particularly definite as to the purpose for which the levy was made. We see no reason for holding that it implies an expenditure in the erection of a poor house, rather than in caring for paupers at a poor house already constructed. The expenditure of money by the county commissioners from the general fund to an unlimited extent was permissible, so long as there were means at their disposal belonging to that fund. And it seems from the finding of the referee, that what the commissioners designated as "poor house fund," was intended and used by them for the very purposes for which, what is in the law known as the "general fund," might have been properly used, viz: "pauper relief in the various modes of in-door or out-door relief. And he well says in conclusion upon this point, that "The calling, or naming this levy a poor house fund

does not in fact, * * * * change its character, or vitiate the tax."

The "general fund" of a county, as its name implies, is one devoted to a variety of uses, and its expenditure is left mainly to the discretion of the board of county commissioners. The amount which may be raised for this fund, the legislature has wisely restricted, the limitation being, as we have seen, ten mills on the dollar of taxable property. Now in the performance of the duty of determining the amount that should be raised within this limit, the commissioners must necessarily make an estimate of the probable needs of the county for the current year in the way of legitimate expenditures. Having done this, and the total rate being ascertained, suppose that, in making the levy, instead of grouping the several items together under the comprehensive head of "general fund" as is usually done, and as the statute above quoted evidently contemplates, they are set forth in detail, giving the amount estimated for each, would the tax, therefore, be illegal? We think not, so long at least as no item is included not proper to be satisfied from the general fund of the county. It would be at most but an informality, in no way invalidating the levy. The ruling of the referee was correct, and was properly sustained by the court.

Certain school district taxes were complained of in the petition, and their collection sought to be restrained, but as they are not alluded to in the brief of counsel for the plaintiff, we suppose that he does not question the correctness of the decision of the court sustaining them. At all events under the finding of the referee that they were based upon a "certificate by the county superintendent of public instruction of Lancaster county, duly made and filed with the county clerk, and ordered by him to be levied on property of the several districts, to pay the amount by him found due from one district to another on division by him of school district property; upon change

of school district boundaries," they were clearly authorized by sec. 8 of the general school law, Gen. Statutes, 962, and their enforcement is proper. We perceive no error in the matters complained of, and the judgment must be affirmed.

JUDGMENT AFFIRMED.