THE BURLINGTON AND MISSOURI RIVER RAILROAD COM-
PANY IN NEBRASKA, PLAINTIFF, V. CASS COUNTY
AND JAMES M. PATTERSON AS TREASURER OF SAID
COUNTY, DEFENDANT.

1. **Taxes:** INSANE FUND. Taxes levied by the county commis-
sioners, upon the receipt of the certificate of the state auditor, to
pay the amount due from the county to the hospital for the in-
sane are legal if levied and collected for that purpose, without
reference to the name by which the tax is designated in making
the levy.

2. ————: BRIDGE FUND. The board of county commissioners had
no authority in the year 1879 to levy a bridge tax, there being
no law in force at that time authorizing such a tax.

APPEAL from the district court of Cass county. Heard
below before POUND, J.

*Marquett & Deweese,* for appellant.

*A. Beeson,* for defendant.

REESE, J.

This action was brought by the plaintiff in the district
court of Cass county to restrain the collection of taxes levied
on its property in the year 1879. Among other taxes lev-
ied in that year were an "insane fund" tax of one-third of
one mill and a "bridge fund" tax of three and one-third
mills. The collection of these taxes was enjoined by the
plaintiff. On the trial the court found the tax denomi-
nated the "insane fund" tax legal, and the injunction as
to it was dissolved. The "bridge fund" tax was found to
be illegal, and the injunction as to it was made perpetual.
From the decision as to the former the plaintiff appeals,
and from the decision as to the latter the defendant appeals.

The first question requiring our attention is as to the

"insane fund." Section 47 of the act for the government of the hospital for the insane, at chap. 40, Compiled Statutes, provides that: "The superintendent shall certify to the auditor of state on the first days of March, June, September, and December the amount (not previously certified by him) due to said hospital from the several counties having patients chargeable thereto, and said auditor shall pass the same to the credit of the hospital. The auditor shall thereupon notify the county clerk of each county so owing of the amount thereof, and charge the same to the county; and the board of county commissioners shall add such amount to the next state tax to be levied in said county, and pay the amount so levied into the state treasury." The answer alleges and the proof shows that this tax was levied for the purpose of paying the indebtedness of the county to the state as its proportion of caring for the insane at the hospital, according to the certificate of the auditor as provided in the section above quoted. The certificate of the auditor was introduced in evidence, and the testimony shows that the levy was made to meet the amount required by the certificate. It was the duty of the auditor to make the certificate to the county clerk. This being done, it was as clearly the duty of the county commissioners to make the levy, or in other words to add such amount to the next state tax. The law does not provide how this amount shall be added to the state tax, whether to the general, sinking, school, or university funds. Indeed it seems very clear it was not intended that it should be added to either. It was evidently the intention of the legislature that the amount due from each county should be levied by the county commissioners and collected by the county treasurer, and that it should not be permitted to become mingled with any of the county or state funds, but should be kept separated from them, paid into the state treasury, and placed to the credit of the county by which it was paid.

While the evidence is not as clear as it perhaps might have been, yet it sufficiently appears that this was being done though in rather an irregular way; and the mere fact that this tax was named or denominated the "insane fund" does not change its character or vitiate the tax, and especially is this true in a case like this where the law does not attach to it any name nor specially point out the manner in which the addition to the state tax shall be made. *B. & M. R. R. Co. v. Saunders Co., ante* p. 123.

The case of the *B. & M. R. R. Co. v. Lancaster County,* 12 Neb., 324, sustains this view, and much of the reasoning used by Chief Justice Lake, though not in a similar case, applies with force here. The tax was levied for the purpose and by the tribunal required by law. The manner in which it was done "would be at most but an informality, in no way invalidating. the levy."

In this decision of the district court we can perceive no error.

The objection to the tax denominated the "bridge fund tax" is based upon different ground. At the time this levy was made there was no law authorizing the levy of any tax for bridge purposes. The revenue law of 1879 provided for the levy of a bridge tax, but was not in force at the time of this levy. By its provisions it did not take effect until the first day of the following September, and was, therefore, the same as if never passed. No tax can be legally levied without legislative authority. *Wheeler v. The City of Plattsmouth,* 7 Neb., 274. . This tax, having been levied without authority of law, is void, and the district court was correct in so holding.

The only remaining question is as to the tender made by the plaintiff to the county treasurer before the commencement of the action. This is virtually disposed of by the foregoing. The finding of the district court, that the amount of the tender plead in the amended petition was less than the amount of taxes which the plaintiff must pay,

being correct, it follows that the tender was insufficient, and therefore the same as if not made.

The decision of the district court is in all things affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.