HERBERT V. DORLAND, TRUSTEE, APPELLEE, V. CITY OF HUMBOLDT, APPELLANT.

FILED JULY 12, 1935. No. 29547.

478

J. J. *Brown* and *Perry, Van Pelt & Marti,* for appellant.

F. A. *Hebenstreit* and *John E. Leyda, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action at law against the city of Humboldt, by a trustee acting for many taxpayers, to recover assessments paid by them which were held to have been illegal and void. The trial court directed a verdict in favor of plaintiff on more than 20 of the causes of action, and dismissed other causes of action. The city of Humboldt has appealed.

In this case an amended petition of 21 pages was filed, setting out 30 separate causes of action. Exhibit A, attached to this amended petition, is an assignment to Herbert V. Dorland, trustee, by 30 owners of property in improvement district No. 2 of the city of Humboldt. The evidence discloses that in 1928 the city of Humboldt formed said improvement district for the purpose of graveling, curbing, and guttering Central avenue and portions of two other streets in the city of Humboldt. On December 22, 1928, the city council, sitting as a board of equalization, levied special assessments against the property therein. An appeal was taken from the action of the city council to the district court for Richardson county, which held the action of the city council, in levying such special assessments against the property involved, for the purpose of paying for such street improvements, to be legal and valid. Appeal was taken to this court, and the

judgment of the trial court was reversed and the cause remanded in an opinion released July 9, 1930, entitled *Garver v. City of Humboldt,* 120 Neb. 132, for the reason that, under the law in question, being section 17-432, Comp. St. 1929, it provided: "Third. The council or board of trustees shall have power by a three-fourths (3-4) vote of all members of such council or board of trustees to enact an ordinance creating a paving, graveling, or other improvement district, and to order such work to be done without petition upon any main thoroughfare that *connects with or forms a part of the state highway system.*" This court held that the authority of a city to perform such acts is strictly construed, and will not be extended beyond the plain import of the language of the charter, and that as Central avenue, Sixth street, or Nemaha street, portions of each of which streets were included in said improvement district No. 2, neither connected with nor formed a part of state highway No. 4, which ran a quarter of a mile north of the north boundary line of the city of Humboldt, the city council did not have the power to improve these streets under that law. This decision of our court, therefore, held the entire proceedings in reference to improvement district No. 2 were wholly void, and canceled all assessments against the property, holding that such assessments were wrongfully levied and could not be collected.

In the case at bar, the trial court, upon motion, dismissed all the causes of action which were based upon payments of taxes made after the opinion was rendered in the case of *Garver v. City of Humboldt, supra.*

In each of the 30 separate causes of action it is alleged that these taxes were paid on an illegal assessment against the property involved, and the amounts were paid under a mistake of law and fact to the city of Humboldt, and that claims were filed against the city council in the full sum of $4,537.01; that payment thereof was refused on July 16, 1934, and the plaintiff, as trustee, asks a judgment against the city of Humboldt in the amount due.

The defendant filed a demurrer to the amended petition,

which was argued and overruled. Thereupon, answer was filed, admitting that the assessments were levied against the property that was benefited.

The defendant contends that the plaintiff was without authority to bring this action; that in so far as said section was amended by the 1933 Session Laws (Laws 1933, ch. 136) it was illegal and void, in so far as it attempted to grant retroactive rights to the plaintiff to take property of the defendant city without due process of law. It is further insisted by the defendant that, at the time of the levy of the assessment for these improvement district taxes, the statutes of Nebraska prescribe a procedure for the payment of taxes under protest, and for an appeal therefrom, or filing suits for the recovery thereof, and that plaintiff and his assignors failed to avail themselves of the plain, statutory remedy of paying such taxes under protest, and are thereby barred, estopped, and precluded from maintaining this action.

We find that this action was instituted on July 7, 1934, and that in each of the 30 causes of action there is set out the number of the tax receipt, the amount paid, and also the date when such taxes were paid, and that all of the tax receipts which are involved in the causes of action appealed in the case at bar had been issued more than four years prior to the filing of the petition.

We find in the case at bar no evidence to the effect that any of these taxes were paid involuntarily. Section 77-1923, Comp. St. 1929, provides that if any person claims his taxes are invalid he may pay the taxes under protest and the county treasurer, or other proper authority, shall give a receipt showing that fact, and further provides that within 30 days after the payment of the taxes such person shall file a statement in writing, duly verified, with the county board, setting forth the amount of the tax paid under protest, and the grounds of the protest, and shall attach the receipt thereto, and the county board at its first meeting thereafter shall inquire into the matter and if the property was not liable for taxation, or has been twice

assessed, an order shall issue to the county treasurer to refund the taxes. If the county board find the grounds of the protest not true, they shall issue an order to the county treasurer to dispose of the money the same as if the taxes had not been paid under protest.

Appeals can be taken from the action of the county board in the allowance or disallowance of such claim, in which case the county treasurer shall retain the taxes until the appeal is finally determined, and if the decision of the county board is reversed a new order shall be issued to the county treasurer by the county board, conforming to the decree of court, in which case the county treasurer shall refund such taxes and write opposite such taxes in the tax list the words, "Erroneously taxed—refunded."

It is clearly the purpose of the legislature, in making this law, to provide a method by which a taxpayer may pay a tax which he considers illegal under protest, and that such payment shall be earmarked and retained until the final determination of the courts as to legality, and if the tax is found to be illegal, then the identical sum so paid by the taxpayer is returned to such taxpayer. But the evidence shows that not one of these payments was made under protest.

In determining whether this action is barred by the statute of limitations, we find the case of *Monteith v. Alpha High School District,* 125 Neb. 665, closely in point. In that case the Alpha High School District was organized under a provision of our statute which required that the rural high school district should hold its annual school meeting on the first Monday of June, but in the year in which the levy was made the annual meeting was held on the second Monday of June, and was therefore void. The fourth paragraph of the syllabus in the case held: "As between a taxpayer and a school district or county, from which a recovery is sought, the statute of limitations begins to run from the time of the payment of the tax, and it is not postponed until the illegality of the tax has been judicially decided."

Again, in the *Monteith* case cited above it is said: "The law is settled in this state that where a person assessed, voluntarily and without compulsion, pays taxes, they cannot be recovered back in an action at law unless there is some constitutional or statutory provision expressly or impliedly giving the taxpayer such right." The *Monteith* case also holds: "We are obliged to hold, therefore, that when plaintiff failed to demand repayment within 30 days from the date of payment of the taxes claimed to be void, in accordance with section 77-1923, Comp. St. 1929, he was forever barred."

The decisions are uniform in holding that the statute of limitations commences to run upon the payment of the taxes, and the fact that this court did not determine the illegality of the tax for some years thereafter does not change the rule. *Welton v. Merrick County*, 16 Neb. 83. Therefore, when the assignors of the plaintiff in this case failed to pay the taxes under protest and to demand repayment within 30 days from the date of the payment of the taxes claimed to be void, their recovery thereof was forever barred, so far as the remedy provided in section 77-1923, Comp. St. 1929.

"Voluntary payments. That a tax or assessment voluntarily paid cannot be recovered back, the authorities generally agree. And it is immaterial in such a case that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back." 2 Cooley, Taxation (3d ed.) 1495.

"Mistake of fact can scarcely exist in such a case except in connection with negligence; as the illegalities which render such a demand a nullity must appear from the records, and the taxpayer is just as much bound to inform

himself what the records show, or do not show, as are the public authorities." 2 Cooley, Taxation (3d ed.) 1498.

"When a voluntary payment is spoken of, the qualifying word is not used in its ordinary sense, and many payments are held to be voluntary which are made unwillingly and only as a choice of evils or of risks." 2 Cooley, Taxation (3d ed.) 1501.

The plaintiffs, however, insist that their cause of action is not barred by the statute of limitations, because, while they did not protect their payments under the general law as found in said section 77-1923, they are now seeking to recover their special taxes under a new amendment, found in chapter 30, Laws 1933, which amended section 17-567, Comp. St. 1929, by adding a section providing generally that, when any such city or village has levied special assessments for the cost of any public improvement, which assessments have been finally held by the courts to be invalid and unenforceable, and if the defects rendering such assessment invalid are of such character that they cannot be remedied by reassessment, and if said special assessments have been paid under mistake of law or fact prior to such final holding, the mayor and council shall appropriate an additional amount annually, sufficient to refund and repay over a period of consecutive years such special assessments erroneously paid, without interest; provided further, that nothing herein contained shall authorize an additional annual levy for the purpose aforesaid beyond three mills on the dollar of actual valuation of all the taxable property within the corporate limits of such city or village in any one year; but said additional levy shall be continued only for as many years as may be necessary to raise the total amount required for such purpose.

Plaintiff argues that this amendment is supplemental to the general tax laws, and, while admitting the statute of limitations commences to run from the time of the payment of the money under the general tax laws, that in the amendment in said chapter 30, Laws 1933, the time does not commence to run until a court of final resort holds that

such assessment is invalid, and, therefore, claims the statute did not commence to run until the mandate was filed in the district court on August 20, 1930. With this statement we do not agree. The plaintiff attempts to recover upon this 1933 amendment on the theory that it attempts to grant a retroactive remedy. All of the payments of taxes set out in the causes of action appealed in the case at bar had been made prior to the date when this amendment, as found in said chapter 30, went into effect, and each of said payments was barred by the 30-day statute of limitations on taxes, and each of the causes of action appealed was also barred by the four-year statute of limitations at the time the suit was filed.

In the early case of *Horbach v. Miller,* 4 Neb. 31, it was held, in quoting from an earlier case of *Bigelow v. Bemis,* 2 Allen (Mass.) 496, that it is competent for the legislature to change statutes prescribing limitations to actions, but that the legislature cannot remove a bar or limitation which has already become complete, and it has been held in other cases that a curative act which attempts to take away property rights already vested is void. To hold with the plaintiff's contention that the legislature can set aside the bar of the statute of limitations and permit the recovery of illegal taxes, it would mean that the legislature has opened the door and will permit the recovery of other taxes paid years before.

In *Gould v. Board of County Commissioners,* 76 Minn. 379, it was said: "If a party could recover back from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy. Municipalities do not guarantee the taxpayers correct action on part of their officers."

*Commissioners v. Rosche Bros.,* 50 Ohio St. 103, is in point so far as the amendment seeks to cover past trans-

actions. In this case raw materials were listed for taxation, on a blank form provided by the county auditor, by Rosche Brothers, tanners in Cincinnati, and the tanners paid the taxes levied thereon. It was later held that this raw material was not taxable. Claims were filed for the refund of the taxes, and refund refused. Some years thereafter an act was passed by the legislature of Ohio providing that taxes so paid, which should not have been listed, shall be held to have been paid involuntarily. The court of Ohio, in discussing whether the statute was retroactive, examined a great many cases, and held: "Therefore when the defendants in error voluntarily, though erroneously, listed their property, and voluntarily paid the taxes assessed upon it, neither by statute nor by any principle of the common law * * * was an obligation imposed upon the county of Hamilton to refund the money received. * * * The obstacle in the way of the defendants in error was not inadequate methods of procedure, but the absence of a law vesting in them a right of recovery. This want the statute under consideration attempted to supply. * * * Counsel contend that the statute is in furtherance of natural justice, and that the clause of the Constitution under consideration does not prohibit retroactive laws of that character. * * * To uphold a statute on this ground, where it seeks to create a liability upon a past transaction, where none existed when it occurred, if it can be done at all, the natural justice of the object sought to be accomplished should be indisputable. * * * The money that they now seek to recover from the county was voluntarily paid to the treasurer who was bound to receive it."

To summarize the case at bar, the city of Humboldt made an improvement district which it did not have the right to do under the law; the improvements were all put in, and greatly benefited the property abutting thereon. A portion of these special assessments was voluntarily paid before this court ruled that they were illegal. It may be said that these taxpayers, on moral grounds, might be entitled to have these taxes illegally assessed paid back to

them. But their money was not earmarked and held by the county treasurer, as it would have been if they had taken the precaution to have paid under protest, as the law provides, and it can only be paid back, as the plaintiff demands, by requiring all of the taxpayers of the city to pay in taxes for the benefit of the property owners in this improvement district to refund a part of the costs of worthwhile improvements installed alongside their property. It is our opinion that this action was barred by the statute of limitations at the time the petition was filed, and, therefore, the judgment of the trial court is reversed, and the action is dismissed at the costs of plaintiff.

REVERSED AND DISMISSED.