# BALTIMORE COUNTY, MARYLAND ET AL. v. CHURCHILL, LTD. ET AL.

[No. 116, September Term, 1973.]

*Decided January 10, 1974.*

2

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Harry S. Shapiro, Assistant County Solicitor for Baltimore County,* and *Charles Freeland, Assistant City Solicitor of Baltimore City,* with whom were *R. Bruce Alderman, Baltimore County Solicitor, George L. Russell, Jr., Baltimore City Solicitor, Paul F. Borden, Anne Arundel County Solicitor, John M. Court, Assistant County Solicitor*

*for Anne Arundel County, Joseph S. Casula, Prince George's County Solicitor*, and *Harry L. Durity, Deputy County Attorney for Prince George's County*, on the brief, for appellants.

*James E. Carbine*, with whom were *George Cochran Doub, John J. Ghingher, III* and *Weinberg & Green* on the brief, for Churchill, Ltd., part. of appellees. *Thomas P. Perkins, III*, with whom were *Jacques T. Schlenger, Harry D. Shapiro* and *Venable, Baetjer & Howard* on the brief, for General Electric Company, another appellee. Submitted on brief by *Harvey A. Jacobs, Shapiro, Weil & Jacobs, Ronal' D. Jacobs* and *Jacobs & Speiller* for District Photo, Inc., other appellee.

SINGLEY, J., delivered the opinion of the Court.

This case began unpretentiously when Baltimore County filed a bill of complaint in the Circuit Court for Baltimore County for declaratory and injunctive relief against Churchill, Ltd., District Photo, Inc., the Director of the State Department of Assessments and Taxation, and the Attorney General of Maryland. The purpose of the action was to obtain a declaration that the law under which Churchill was claiming a refund of personal property taxes paid to the County in the amount of $59,929.00 as a result of an erroneous assessment, and under which District Photo was seeking a refund of taxes similarly paid in the amount of $29,651.00, was unconstitutional, and to enjoin hearings which had been scheduled before the Department of Assessments and Taxation on the refunds claimed.

By the time the case came on for hearing, Walter R. Richardson, Baltimore County's Director of Finance; Anne Arundel County and its Controller, Donald P. Carter; Prince George's County and its Director of Finance, Albert W. Gault; and the Mayor and City Council of Baltimore had intervened as parties plaintiff, and seven other corporations, all similarly situated taxpayers, had been joined as parties defendant. The political subdivisions and their officials will hereafter be referred to collectively as the Appellants, and the appellee corporations as the Taxpayers.

The provision which is under attack became effective, as amended, on 1 July 1972 and is codified as Maryland Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 39A.[1] Section 39A (hereinafter the Act) provides:

"(a) Whenever the supervisors of assessments or the department of assessments of Baltimore City or the State Department of Assessments and Taxation shall determine that the assessment of any personal property was erroneous due to an existing exemption to which the taxpayer was entitled at the time of assessment, the taxpayer shall be entitled to a refund of the personal property taxes paid according to the erroneous assessment, notwithstanding the failure to protest and appeal the erroneous assessment in accordance to the provision of this article.

"(b) Any taxpayer who shall apply within five (5) years from the date of finality for assessment for any tax year shall be eligible for a refund under this section for any taxes paid for such tax year as a result of any erroneous assessment of personal property; provided, however, that any taxpayer shall have until July 1, 1973, to apply for and be eligible for such refund based on any erroneous assessment of personal property made since December 31, 1965."

From an order denying the Appellants' motions for summary judgment, granting the Taxpayers' motions for summary judgment and declaring the Act to be a proper, valid, and constitutional enactment, this appeal was taken.

---

1. This statute amended and reenacted an earlier section 39A enacted by Chapter 488 of the Laws of 1971 which had been criticized by the Attorney General, 56 Op. Att'y Gen. 448 (1971), primarily because, as a result of inept drafting, it was restricted to the refund of taxes paid on erroneous assessments of personal property made in the first instance by the county supervisors of assessments and the Department of Assessments of Baltimore City, and was inapplicable to erroneous assessments made by the State Department of Assessments and Taxation. As a consequence, prior to the amendment, no provision existed for refunds of taxes paid on erroneous assessments of personal property owned by corporations which are assessed by the State.

Before considering the question of the validity of the Act, there is a threshold question of the Appellants' standing to sue. The chancellor, Proctor, J., concluded that Baltimore City and the counties lacked the requisite standing, but in order to reach the merits of the case assumed, without deciding, that at least one of the county officials could maintain the suit, even though all of them had failed to allege that they would be subject to a pecuniary loss or to an increase in their taxes, *Stovall v. Secretary of State*, 252 Md. 258, 263, 250 A. 2d 107, 110 (1969); *Murray v. Comptroller of the Treasury*, 241 Md. 383, 391, 216 A. 2d 897, 901, *cert. denied*, 385 U. S. 816 (1966).

We agree with the chancellor that what was said by way of dictum in *City of Baltimore v. Concord Baptist Church, Inc.*, 257 Md. 132, 138-39, 262 A. 2d 755, 758-59 (1970), where Baltimore City's Comptroller and Director of Finance, as individuals, had joined with the City in challenging an act of the General Assembly on constitutional grounds, can now be adopted, in the circumstances of this case, to support the assumption of standing, without so holding:

"Messrs. Benton and Pressman had sought declaratory relief and had later intervened in their individual and official capacities, as the City officials charged with the duty of acquiring property and paying for it. Theirs was the dilemma faced by public officials 'either in refusing to act under a statute [they] believe to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional,' recognized in *Pressman v. State Tax Comm'n*, 204 Md. 78, 102 A. 2d 821 (1954) and in *Board of Education v. Allen*, 392 U. S. 236, 88 S. Ct. 1923, 20 L.Ed.2d 1060 (1968). See also, Borchard, *Declaratory Judgments* (2d Ed. 1941) at 771. Additionally, where the issues presented are of great public interest and concern, the interest necessary to sustain standing need only be slight. *Horace Mann League v. Board of Public Works*, 242 Md. 645, 653, 220 A. 2d 51, [54,] *cert. den.* 385 U. S.

97, 87 S. Ct. 317, 17 L.Ed.2d 195 (1966); *Baltimore Retail Liquor Package Stores Ass'n v. Board of License Comm'rs,* 171 Md. 426, 189 A. 209 (1937); see also *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 [, 71 A. 2d 483] (1950).

"In holding that the individual appellants had standing, we are not overlooking the principles that the City, as a creature of the State, possesses no power which it may invoke against the State, even on constitutional grounds, *Duvall v. Lacy,* 195 Md. 138, 73 A. 2d 26 (1950); *Williams v. Mayor & C. C. of Baltimore,* 289 U. S. 36, 53 S. Ct. 431, 77 L. Ed. 1015 (1933); *United States v. Railroad Co.,* 84 U. S. (17 Wall.) 322, 21 L. Ed. 597 (1873), but compare *Gomillion v. Lightfoot,* 364 U. S. 339, 81 S. Ct. 125, 5 L.Ed.2d 110 (1960), and may have even less right to challenge the constitutionality of a statute under which it is proceeding. *Creative Country Day School v. Montgomery County Bd. of Appeals,* 242 Md. 552, 568, 219 A. 2d 789 [, 797] (1966)."

*Cf. Director of Finance v. Alford,* 270 Md. 355, 311 A. 2d 412 (1973).

The political subdivisions, as creatures of the State, have "no right to question the constitutionality of the acts of [their] superior and creator," *Columbia County v. Board of Trustees,* 17 Wis. 2d 310, 317, 116 N.W.2d 142, 146 (1962); *Charles Hewitt & Sons Co. v. Keller,* 223 Iowa 1372, 1377, 275 N. W. 94, 97 (1937). The individual appellants contend that the Act violates both the Constitution of the United States and the Maryland Constitution. With respect to the alleged infirmity under the federal Constitution, numerous Supreme Court decisions preclude the political subdivisions [2] from prevailing on the standing issue: "A

---

**2.** Appellants Anne Arundel County, Baltimore County, and Prince George's County are all chartered counties, *see* Maryland Constitution, Art. XI-A, and, by Article I, § 101 of their respective Charters, deem themselves bodies "corporate and politic." As regards appellant Mayor and City Council of Baltimore, the Baltimore City Charter, Art. I, § 1, provides: "The inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore' . . . ."

municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator," *Williams v. Mayor & City Council of Baltimore*, 289 U. S. 36, 40 (1933); *see also Newark v. New Jersey*, 262 U. S. 192, 196 (1923); *Trenton v. New Jersey*, 262 U. S. 182, 192 (1923); *City of Marshfield v. Town of Cameron*, 24 Wis. 2d 56, 63, 127 N.W.2d 809, 813 (1964); *Sweeney v. State*, 251 N. Y. 417, 419-20, 167 N. E. 519, 520 (1929); *Board of Revenue v. Southern Bell Tel. & Tel. Co.*, 200 Ala. 532, 533, 76 So. 858, 859 (1917). However, whether the subdivisions have standing to complain of a violation of the constitution of a state, in state courts at least, is a question of state practice, *Williams v. Mayor & City Council of Baltimore, supra*, 289 U. S. at 47-48. The Maryland practice, as indicated in *Mayor & City Council of Baltimore v. Concord Baptist Church, Inc., supra*, provides that the subdivisions, as creatures of the State, share the interests of the State, and, as such, cannot challenge the acts of the State.[3] *See Black River Regulating Dist. v. Adirondack League Club*, 307 N. Y. 475, 489, 121 N.E.2d 428, 434 (1954), *appeal dismissed*, 351 U. S. 922 (1956). This principle is in accord with the prevailing rule, that a subdivision or other arm of a state does not, in general,[4] have standing to contest the constitutionality, under either the federal or state constitution, of any act of the state. *See, e.g., State v. Rothwell*, 25 Wis. 2d 228, 233, 130 N.W.2d 806, 808-09 (1964) (municipalities and state agencies, state constitution); *City*

---

**3.** As has been previously indicated, in *Concord* the appellant — public officials were found to have standing *as individuals. Cf.* Fulton Foundation v. Department of Tax'n, 13 Wis. 2d 1, 109 N.W.2d 285 (1961) (state taxing authority had standing to question constitutionality of a particular state tax exemption, where the issue was of "great public interest," and there was little likelihood that any taxpayer would ever raise the issue); *accord,* Mower County Bd. of Comm'rs v. Board of Trustees, 271 Minn. 505, 136 N.W.2d 671 (1965).

**4.** Some limited exceptions to the general rule have been recognized. *See* Roe v. Kervick, 42 N. J. 191, 199 A. 2d 834 (1964) (state treasurer permitted standing to question validity of legislation against state constitution where legislative scheme meshed numerous levels of government); Kaulakis v. Boyd, 138 So. 2d 505 (Fla. 1962) (ministerial officer may contest constitutionality of law involving disbursement of public funds; state constitution); Yelle v. Bishop, 55 Wash. 2d 286, 347 P. 2d 1081 (1959) (accord with Roe v. Kervick, *supra*); *see also* note 3, *supra*, and note 5, *infra*.

*of Marshfield v. Town of Cameron, supra* (municipalities, federal and state constitutions); *State v. Kelly,* 377 S.W.2d 328 (Mo. 1964) (county constable); *Columbia County v. Board of Trustees, supra* (county, state constitution); *Town of Waterford v. Connecticut State Bd. of Educ.,* 148 Conn. 238, 245, 169 A. 2d 891, 895 (1961) (towns and local boards of education); *Smith v. Flournoy,* 238 La. 432, 115 So. 2d 809 (1959) (public officer, state constitution); *Louisiana Motor Vehicle Comm'n v. Wheeling Frenchman,* 235 La. 332, 103 So. 2d 464 (1958) (public officer or body); *Charles Hewitt & Sons Co. v. Keller, supra* (counties and other municipal corporations); *Board of Revenue v. Southern Bell Tel. & Tel. Co.,*[5] *supra* (counties, federal constitution); *Board of Educ. v. Allen,* 27 App. Div. 2d 680, 276 N.Y.S.2d 281 (3d Dep't 1967) (boards of education); *City of Buffalo v. State Bd. of Equalization & Assessment,* 26 App. Div. 2d 213, 272 N.Y.S.2d 168 (3d Dep't 1966) (mayor and city); *see also Williams v. Mayor & City Council of Baltimore, supra* (municipal corporations, federal constitution); *Newark v. New Jersey, supra* (city, federal constitution); *Trenton v. New Jersey, supra* (city, federal constitution); *but see State v. Southern Bell Tel. & Tel. Co.,* 204 Tenn. 207, 319 S.W.2d 90 (1958), *cert. denied,* 359 U. S. 1011 (1959) (Commissioner of Highways given standing, state constitution); *Brown v. Board of Comm'rs,* 223 N. C. 744, 747, 28 S.E.2d 104, 106 (1943) (court did not concede that county was "a creature of the Legislature and as such cannot challenge the constitutionality of an act of its creator"; state constitution).

Perhaps the classic statement of the principle may be found in 1 Cooley, Constitutional Limitations 393-95 (8th ed. 1927):

"The creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not

---

**5.** *Compare* Board of Revenue v. Southern Bell Tel. & Tel. Co. *with* City of Mobile v. Gaylord Dep't Stores, 276 Ala. 568, 165 So. 2d 118 (1964) (city permitted standing to question validity of taxing statute against *state* constitution because of interest in revenues).

deprive the legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether in the legislative discretion, and substitute those which are different. The rights and franchises of such a corporation, being granted for the purposes of government, can never become such vested rights as against the State that they cannot be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated." [Footnotes omitted.]

The difficulty here is that there is some doubt that the county officials here involved were faced with the dilemma encountered in *City of Baltimore v. Concord Baptist Church, Inc., supra,* since it can be argued that their duty was merely ministerial here, because the responsibility for determining erroneous assessments lay, under the terms of the Act, with either the assessing authority of Baltimore City and of the counties, or of the State, and not with the local tax collectors. In order to reach the merits, we shall assume, arguendo, that the individual appellants have standing here.

Turning now to the issues presented, the Appellants argue that the Act is invalid because of a failure to meet the requirement of Maryland Constitution, Art. III, § 33:

"The General Assembly shall not pass local, or special Laws . . . refunding money paid into the State Treasury . . . unless recommended by the Governor, or officers of the Treasury Department. . . ."

The short answer to this contention is that the Act is not a special law as contemplated by the Constitution: the passage of a private act providing for individual cases, *Potomac Sand*

& *Gravel Co. v. Governor of Maryland,* 266 Md. 358, 378-79, 293 A. 2d 241, 251-52, *cert. denied,* 409 U. S. 1040 (1972).

Nor does the Act, in providing for the refund of taxes mistakenly paid, violate Article 15 of our Declaration of Rights, which requires uniformity in the assessment and taxation of land, improvements on land, and personal property. We have held that Article 15 is not a grant of power to tax, but a limitation on it, *Marco Associates, Inc. v. Comptroller,* 265 Md. 669, 674, 291 A. 2d 489, 492 (1972); *Katzenberg v. Comptroller,* 263 Md. 189, 205, 282 A. 2d 465, 473 (1971). It has nothing whatever to do with refunds, especially since the Act may be availed of by all similarly situated taxpayers.

As a practical matter, what the Act did was to set up a new procedure for the refund of taxes paid on assessments erroneously imposed. It increased the three-year period within which refunds could be claimed fixed by Code (1957, 1969 Repl. Vol.) Art. 81, § 213 as to State taxes, and Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 214 as to taxes paid a county or the City of Baltimore, to five years [6] and, in effect, nullified the proviso in section 214(a) that there could be no refund of taxes paid on an assessment which had become final, even though erroneous.

The principal thrust of the Appellants' argument is directed at what they regard as the retroactive effect of the Act. By way of example, Churchill, Ltd., a wholesale distributor of alcoholic beverages, asserts it had mistakenly paid personal property taxes in the years from 1966 through 1971 on imported liquor stored in original packages, a levy clearly prohibited by Article I, § 10, clause 2 of the United States Constitution,[7] *see Hearst Corp. v. State Dep't of Assessments & Tax'n,* 269 Md. 625, 629, 308 A. 2d 679, 681 (1973); *see also Department of Revenue v. James B. Beam Distilling Co.,* 377 U. S. 341 (1964); *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 657, 664-68 (1945); *Low v. Austin,* 80 U.

**6.** The period is seven and one-half years as regards taxes assessed since 31 December 1965, for which refunds were claimed before 1 July 1973, Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 39A(b).

**7.** "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports . . . ." U. S. Const. art. I, § 10, clause 2.

S. (13 Wall.) 29 (1872); *Brown v. Maryland,* 25 U. S. (12 Wheat.) 419, 441-42 (1827). As a consequence, Churchill filed a claim for a refund of amounts erroneously paid to Baltimore County.

We have held that a tax is not necessarily invalid because it is retroactive, *Diamond Match Co. v. State Tax Comm'n,* 175 Md. 234, 200 A. 365 (1938), and that an exemption may be granted retroactively, *Woman's Club v. State Tax Comm'n,* 195 Md. 16, 72 A. 2d 742 (1950).

The Appellants argue that the taxes paid by Churchill and mistakenly paid by the other defendants have become vested and thus fall within the notion that a statute which purports to affect rights which have already vested denies due process of law. It seems to us that this contention is grounded on a misconception. What the Act does is simply to revise the mechanism under which refunds may be claimed and to extend the period within which claims may be filed. The General Assembly did no more than change the rules affecting an imposition which it had authorized originally. As the chancellor noted in his opinion, this issue was resolved in *Allen v. Dovell,* 193 Md. 359, 363-64, 66 A. 2d 795, 797 (1949):

> "The wisdom of statutes of limitations as statutes of repose is now fully appreciated in our jurisprudence. It is thoroughly understood that a statute of limitations, which does not destroy a substantial right, but simply affects remedy, does not destroy or impair vested rights. *Kelch v. Keehn,* 183 Md. 140, 144, 36 A. 2d 544 [, 545 (1944)]. It is true that the Legislature cannot cut off all remedy and deprive a party of his right of action by enacting a statute of limitations applicable to an existing cause of action in such a way as to preclude any opportunity to bring suit. However, the Legislature has the power to amend a statute of limitations either by extending or reducing the period of limitations, so as to regulate the time within which suits may be brought, provided that the new law allows a reasonable time after its

enactment for the assertion of an existing right or the enforcement of an existing obligation."

We have reviewed the cases on which the Appellants rely and remain unpersuaded. *Dorland v. City of Humboldt,* 129 Neb. 477, 262 N. W. 22 (1935), holds that a taxpayer who voluntarily pays a tax which was illegally assessed cannot recover after the limitation period has run, and that it is incompetent for the legislature to remove a bar which has already become complete. The rationale of *Fannin County v. Renshaw,* 29 S.W.2d 476 (Tex. Civ. App. 1930), was that a statute which purports to be both retrospective and prospective in lifting the bar of limitations violates a Texas constitutional provision against retroactive laws and therefore can only be prospective in its operation. *Commissioners v. Rosche Bros.,* 50 Ohio St. 103, 33 N. E. 408 (1893), is authority for the proposition that an act of the legislature which permitted the refund of taxes erroneously paid created a new right, not a new remedy, and thus violated a provision of the Ohio Constitution prohibiting the enactment of retroactive laws.

Finally, we do not regard as apposite two Illinois cases, *Country Mut. Ins. Co. v. Knight,* 40 Ill. 2d 423, 240 N.E.2d 612 (1968), and *Board of Educ. v. Blodgett,* 155 Ill. 441, 447, 40 N. E. 1025, 1026-27 (1895). *Country Mutual* held the Uniform Disposition of Unclaimed Property Act to be unconstitutional insofar as it purported to permit the recovery of money or property held by insurance companies, as to which limitations had run. In reaching this result the court relied on *Blodgett* which struck down an act passed after limitations had run, because it purported to extend the time within which purchasers of bonds invalidly issued could sue on the bonds.

The better reasoned view on the subject appears to be that adhered to in federal law. In *Chase Sec. Corp. v. Donaldson,* 325 U. S. 304, 315-16 (1945), the Supreme Court firmly denied "that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an

offense against the Fourteenth Amendment." [8] The Court noted that the shelter afforded by statutes of limitation has never been regarded as a "fundamental" right of the individual. An individual "may, of course, have the protection of the [public] policy [embodied in the statute] while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control," 325 U. S. at 314; *see also Campbell v. Holt*, 115 U. S. 620 (1885).

The Appellants have no vested right in taxes which were collected in error. What they had, prior to the passage of the Act, was a right to set up procedural defenses, including limitations, as a bar to refunds claimed. Whatever may be the rule elsewhere, Maryland does not recognize any vested right in an ability to assert limitations as a defense, under the circumstances here.

In *Hagerstown v. Sehner*, 37 Md. 180, 196 (1872), a similar contention was made by the Mayor and Council of Hagerstown while attacking an act of the General Assembly which had retroactively extended the time within which claims could be made against a municipality for damages sustained in civil disturbances. There, our predecessors said:

> "That law was in force when the Act of 1867 was passed, which provides that suits may be brought for causes of action that may *heretofore* have arisen under this existing law within *five years* from the time of their accrual and not after. The objection is that this takes away a *vested right* to plead the pre-existing limitation of three years in bar of the suit. But by whom is this objection made? Not by any one to be personally bound by the judgment, or whose property can be levied on and seized in execution for its satisfaction or on which it can operate as a lien, but by a public municipal corporation created by the Legislature

---

**8.** In *Donaldson* the Court was aware that some state decisions, citing, *e.g.*, *Blodgett*, had not followed this rationale when construing state constitutions, and that those state courts were, of course, privileged to do so, 325 U. S. at 312-13.

for public purposes, charged with the duty and invested with the power to protect the property of the citizen, and deriving its existence and discharging its functions at the will and by the direction of the supreme legislative power of the State. That is the party which asserts as residing in itself, in its public corporate capacity, this vested right beyond the control of its creating and governing power. In our judgment no such vested right exists . . . ." (Emphasis in original.)

See also Sanger v. City of Bridgeport, 124 Conn. 183, 187-89, 198 A. 746, 748 (1938) (special act of legislature, validating plaintiff's notice to defendant — municipality of defective sidewalk, upheld as not depriving defendant of any vested rights).

While it is true, broadly speaking, that the enactment of statutes of limitation which operate only prospectively are regarded as affecting the remedy and are upheld, and that revisions of statutes of limitation which operate retroactively are regarded as an impermissible interference with vested rights, 2 Cooley, supra, 760-65, this general principle is not directly applicable here. In sum, if the State had the power to impose the tax in the first instance, it had the power by retroactive legislation to cure defects and insure equality of treatment, National Can Corp. v. State Tax Comm'n, 220 Md. 418, 440, 153 A. 2d 287, 300 (1959), appeal dismissed, 361 U. S. 534 (1960); Will of Heinemann, 201 Wis. 484, 493-94, 230 N. W. 698, 701 (1930). As a consequence, the Appellants cannot successfully attack a determination by the General Assembly that taxes paid on assessments erroneously made should be refunded. Strictly speaking, what the General Assembly did, as it had the right to do, was to make a determination of legislative policy rather than a change in the statute of limitations. "All refunds of State taxes are matters of grace with the Legislature," Wasena Housing Corp. v. Levay, 188 Md. 383, 389, 52 A. 2d 903, 906 (1947).

> Order affirmed, costs to be paid
> by appellants.