**STATE of Missouri ex rel. ST. LOUIS COUNTY, Missouri, Respondent,**

v.

**Robert C. KELLY, Constable for the Third Constable District, St. Louis County, Missouri, Appellant.**

No. 50019.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

George E. Murray, Clayton, for appellant.

Norman C. Parker, St. Louis County Counselor, Joseph B. Moore, Asst. County Counselor, for respondent.

COIL, Commissioner.

In February 1958 the state at the relation of St. Louis County filed a petition for a writ of mandamus against Robert C. Kelly as the constable for the third constable district of St. Louis County. We shall sometimes herein refer to relator as "county" and to respondent below as "the constable." The petition for the writ averred, inter alia, that certain county ordinances required the constable to pay into the county treasury money which had come into his possession and was in his bank accounts, and prayed that he be directed "to forthwith deposit all monies which he presently has in his possession and which shall in the future come into his possession, according to and under the terms of" specified county ordinances (present sections 104.390, 303.010, and 303.020). An alternative writ of mandamus was issued, directing the constable to deposit the money in accordance with the prayer of the petition for the writ. The constable filed his return, to which was attached a copy of a letter from the Missouri Attorney General pertaining to the disposition of money in a constable's possession and a copy of the constable's bond

executed pursuant to the requirements of Section 63.030.[1] Further reference will be made to both those documents. After relator filed a reply to respondent's return, the parties filed an "agreed stipulation of facts," subject to the right of either to object to their relevancy or materiality, and the case was submitted in January 1962.

The facts so stipulated, in so far as necessary to a disposition of this case in the view we take of it, are here set forth.

Respondent was duly elected constable of the third magistrate constable district in St. Louis County, took office on January 1, 1947, and served continuously and was serving at the time of the stipulation. The magistrate for the third district had since 1947 required a litigant at the time of filing a case to deposit as security for court costs and constable fees an amount fixed by the magistrate. A part of that sum was transferred by the magistrate to the constable as security for constable fees which might be earned in accordance with the constable fee schedule set forth in Section 63.140. The constable kept a record of earned fees in accordance, we assume, with the schedule set forth in Section 63.140, and paid those earned fees monthly into the county treasury. The excess or unearned portion, if any, of the so-called cost deposit which had been received by the constable was retained by him and was thereby "a credit in favor of the litigant or his attorney." Upon request of any such depositor, the amount of such credit would be paid to him. We interpolate as the logical corollary, that in the absence of any such request the amount of such credit would remain indefinitely in the constable's bank account in which he had deposited funds received by him as constable as well as his own private funds.

The stipulation included these sentences: "That the funds referred to in the pleadings and now in controversy as money in respondent Constable's control, has varied in amounts from day to day and from time to time as deposits have been made and payments disbursed from said funds in accordance with the practice of the respondent. That said balance, if any, would be adjusted as the date of filing of judgment herein, if a judgment would be rendered in favor of the relator and against the respondent; provided further that if judgment should be rendered in favor of the relator and against the respondent the court's order shall provide for and direct the respondent to make and present a complete and proper accounting to relator and to make payment to relator in accordance therewith and it is understood and agreed that respondent will make and present such accounting to relator and make such payment."

It was further stipulated that the constable had executed and deposited with the county his official bond, a true copy of which was, as aforenoted, attached to respondent's return.

The relator objected to certain facts contained in the stipulation which pertained to money in the hands of the constable other than the "earned fees" heretofore described on the ground that they were "not at issue in this case."

The trial court found the ordinances, hereinafter referred to, to be valid and constitutional and in the exercise of what it termed "extraordinary injunctive relief" and in the exercise of its power as a court of equity, ordered the constable to "deposit all funds now in his possession over to the Treasurer of St. Louis County, together with any interest accumulated thereon, if any, * * *" and to provide a complete and proper accounting of such funds in his possession, reserving to the court the right to order a complete audit of the constable's books and accounts.

The constables in St. Louis County, including the respondent, are paid a monthly salary and transportation allowance and there is no provision for them to receive

1. All section citations refer to sections in RSMo 1959 and V.A.M.S. unless otherwise indicated.

any additional amounts. There was and, so far as we are aware, there is no provision in the law requiring or authorizing a "cost deposit to secure the payment of constable fees."

The ordinance requirements relied upon by relator are portions of the following sections of the St. Louis County Ordinances then in effect: Sections 104.390, 303.010, and 303.020. Relator says that the pertinent provisions of those three sections are:

"Sec. 104.390 * * * All fees, costs and any other monies received or collected by any elective official of St. Louis County shall be paid by him into the County Treasury at least once each month * * *."

"Sec. 303.010 * * * Any officer, employee, or agent of St. Louis County who shall receive any moneys belonging to the County, or any moneys not belonging to the County, which may be obtained by him by virtue of, or under color of such office or employment, which are to be held, paid out, or transmitted by the County or any officer, employee, or agent thereof, shall promptly deposit all such moneys in the County Treasury; * * *. The County Treasurer shall deliver duplicate receipts for all such moneys received, one to the officer, employee, or agent making the deposit, and the other to the County Auditor. Each such deposit shall be entered on the books of the County Auditor, showing the source, the amount and the fund or account to which credited. Any such monies not belonging to the County shall be placed in a special fund or account, distinct and apart from any moneys belonging to the County * * *."

"Sec. 303.020 * * * The County Treasurer shall pay out such moneys not belonging to the County held in any special fund or account for disbursement or transmittal by the County or any officer, employee, or agent thereof, on warrants approved and signed by the County Auditor and the County Supervisor and not otherwise. The County Auditor and the County Supervisor shall approve the disbursement of such moneys not belonging to the County only as provided by the laws, ordinances, rules, regulations or agreements pertaining to said moneys * * *."

It has been made clear by the portion of the stipulation of facts heretofore quoted, by the objection of relator to the materiality and relevancy of certain of the stipulated facts, and by the position of relator in this court that the money which the county wants paid into its treasury in this case is only the amount of so-called "unearned fees" which is or should be in the hands of the constable. The stipulation of facts, however, included the statements that the constable, in addition to the advance deposit for costs heretofore described, received in the course of his official duties sums of money as a result of executions, levies, garnishments, and other processes of the court which in due course are paid by the respondent constable to respective parties litigant, and that he received also sums of money advanced by litigants to cover constable expenses incurred on behalf of litigants, such as trucking charges, moving expenses, storage expenses, etc.

Appellant points out that the prayer of the petition and the alternative writ sought and issued directed the constable "to forthwith deposit *all monies* which he presently has in his possession and which shall in the future come into his possession, according to and under the terms of" county ordinance sections 104.390 and 303.010. (Our italics.) It is also true that county ordinance section 104.390 refers to "fees, costs and any other monies received or collected by any elective official" and that section 303.010 refers to "any moneys belonging to the County, or any moneys not belonging to the County" which are obtained by any county officer by virtue or color of his office or employment. Appellant argues as a result of the facts noted above that while the county may wish on this appeal to talk about and deal with only so-called "excess cost deposits or unearned constable fees," the petition for the writ of mandamus, the ordi-

nances set forth therein, the alternative writ, and the trial court's final judgment referred to and gave directions concerning "all monies" or (in the case of the judgment) "all funds," and that none of those documents even purported to refer only to so-called unearned constable fees; thus, says appellant, the alternative writ and the judgment include and cover money in the hands of or to come into the hands of the constable which clearly, in accordance with the law, should not be, in any event, deposited in the county treasury and money which relator tacitly at least, concedes has been and continues to be properly disposed of by the constable by paying such other money to persons or entities other than the county.

We agree with appellant that "the extraordinary writ of mandamus 'is a stern, harsh writ, and, when issued is an unreasoning, inflexible, peremptory command to do a particular thing therein specified without condition, limitation, or terms of any kind. * * *' The final or peremptory writ must be based upon and strictly follow the alternative writ, and (it is usually said) the alternative writ must follow and conform to the petition.[16]

"It is frequently stated and held by the Missouri courts that 'he who seeks mandamus "must specify just what he wants, nothing more or less." * * * Thus, unless we can grant the relief sought we can grant no relief.'[17] This salutary rule we approve in principle and we expect to follow it as a general course in dealing with these writs. One who chooses to invoke the aid of this extraordinary writ should first know exactly what relief he is entitled to and ask for it alone, not leave it to the superintending court to cull out the whole bushel in order to search for one good apple. But this rule, like many others, is subject to indulgence and discretion. In order to avoid injustice the courts have sometimes gone around to enter at the back door by allowing the petition to be amended and then amending the alternative writ.[18]" State ex rel. Standefer v. England, Mo.

App., 328 S.W.2d 732, 737. (Footnotes indicated by the numbers in the above quotation contain citations to authorities relevant to the propositions stated.)

■ We are of the view that inasmuch as the public has an interest in seeing to it that duly-elected public officials shall not unjustly enrich themselves by retaining unearned and unauthorized money which, in truth and in fact, belongs to the depositors thereof, we should, in order to avoid injustice and in the exercise of our discretion, consider that the petition and the alternative writ have been so amended as to make this action, in its present posture, one for a peremptory writ of mandamus commanding the constable to deposit in the county treasury any sum representing so-called "unearned fees" which is or should be in his possession as a result of the "cost deposits" made as hereinbefore described. "A public officer owes an undivided duty to the public whom he serves, and is not permitted to place himself in a position which will subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interests of the public." 43 Am.Jur., Public Officers, § 266, p. 81.

■ The recent case of St. Louis County v. Litzinger, Mo., 372 S.W.2d 880, decided by Division Two of this court, held that a St. Louis County constable had the ministerial duty, by reason of the provisions of the ordinances heretofore mentioned, to deposit in the county treasury all funds which came into his hands "in connection with constable fees." That holding applied to the present fact situation clearly means that it is the ministerial duty of the constable to pay into the county treasury money deposited with him as security for constable fees and in excess of earned constable fees, and, consequently, he may be properly directed to do so by a peremptory writ of mandamus.

Appellant seeks to distinguish the Litzinger case on the ground that the action

there, as finally submitted, was a "mandatory injunction action to compel a *former* office holder to relinquish funds retained by him after his term of office had ended," while the constable in the present case is still serving and "is seeking to comply with the Constitution and Laws of the State of Missouri and the Magistrate Court under whose direction he acts." While it is true that Litzinger was a former officer and appellant was a presently serving officer, that *factual difference does not militate against the fact that the holding in the Litzinger case is controlling here* in so far as that case held that a St. Louis County Constable had a ministerial duty to pay over to the county treasury so-called "unearned constable fees."

■ Appellant argues further that the ordinance sections in question are invalid and unconstitutional. But as held in the Litzinger case, supra, where an officer has a ministerial duty to perform a certain act he may not question the constitutionality of the ordinance or law requiring him to perform that act. 372 S.W.2d 881 [1]. Appellant contends, however, that he comes within two well recognized exceptions to that general rule: first, where one has a personal or property interest greater than the interest of any other citizen in the constitutionality of the ordinance or law and, secondly, where the officer has acted upon or under the advice of the state's attorney general to the effect that the law in question is unconstitutional.

■ In support of his contention that he comes within the first exception, the constable says that he has a "personal and property interest, in that he is personally liable on his statutory bond for disbursement of monies received by him to all proper parties." The condition of the bond executed by respondent was in the language of the statute requiring the bond, Section 63.030, and provided that respondent would "faithfully execute all process to him directed and deliver and pay to the proper parties all moneys received by him by virtue of his office, and pay into the county treasurer monthly all fees received by him by virtue of his office, and in every respect discharge all of the duties of a constable according to law, * * *." As heretofore noted, we have confined the issue and shall direct that the command of the peremptory writ shall be confined to the deposit in the county treasury of money which is or should be in the possession of the constable which represents the excess of sums advanced by litigants for constable fees over the amount of earned constable fees. One of the ordinances which, according to the Litzinger case, supra, required the constable to perform the ministerial duty of paying into the county treasury so-called "unearned fees" (Section 104.390) required in part that "all fees * * * and any other monies received or collected" by an elected official should be paid into the county treasury; and the other section (303.010) required that any county officer who received "any moneys belonging to the County, or any moneys not belonging to the County, which may be obtained by him by virtue of, or under color of such office or employment" should deposit such moneys in the county treasury. Thus, it appears that under both the county ordinance sections (applicable on the authority of the Litzinger case) money received by a county constable "in connection with constable fees" is received either by virtue of or by color of his office. Thus, it would appear that the money with which we are presently concerned, while not belonging to the county, is received by the constable *by virtue of his office,* in which event he would not be liable on his bond because he would in accordance with the command of the writ pay it into the county treasury in strict accord with the condition of his bond. If it be argued that the money in question was received *by color of his office,* and was thereby not received *by virtue of his office* (a matter we do not decide), still the constable would not be liable on his bond because it purports to cover only money and fees received by him "by virtue of his office." It follows that the

requirement of a peremptory writ, limited to money represented by "unearned fees" as aforestated, would not make respondent liable on his statutory bond.

In support of his contention that he may raise the validity and constitutionality of the county ordinance because he acted under the advice of the attorney general that the ordinance was unconstitutional and that "his failure to follow the course of action sought by the Relator is based upon such advice," respondent points to the letter, dated October 17, 1957, from the Missouri Attorney General to the then Prosecuting Attorney of St. Louis County.

Among the questions asked in the letter were whether, under the provisions of Section 50.480, "fees" included money deposited with the constable as security for the payment of court costs but not yet earned and if the unearned portion of the costs should be turned over to the county treasurer, and could St. Louis County operating under a charter form of government, require such by ordinance and, if not, what disposition should be made of unearned fees. The opinion, which, as stated, dealt with a construction of the provisions of Section 50.480, tentatively answered some of the questions. Section 50.480 provided: "It shall be the duty of each sheriff, marshal, coroner, clerk of the courts of record, and other officers, on the first day of January and the first day of July in each year, to pay over all fees in their hands belonging to others to the treasurer of the county, with the name and amount belonging to each person, date when collected and in what case, taking from the treasurer duplicate receipts therefor, one of which the officer shall file with the clerk of the county court, who shall immediately charge the treasurer with the same."

It is true that in one portion of the tentative opinion, the attorney general stated that any unearned portion of any fund deposited as security of costs should not be paid into the county treasury under the provisions of Section 50.480, RSMo 1949,

V.A.M.S., and indicated that such unearned fees belonged to the depositor and should be returned to him. The attorney general then stated that he was at a loss to understand the discussion concerning earned and unearned portions of apparently cash deposits for security for costs because the statutory provisions relating thereto provided for an obligation to secure costs and not for cash deposits, and that, consequently, sufficient facts did not appear in the prosecuting attorney's inquiry to justify the attorney general in assuming that security for costs required by magistrate courts took the form of money deposits. And, said the attorney general further, the prosecuting attorney's inquiry needed clarification also with respect to how it occurred that any portion of any security for costs, whether a money deposit or otherwise, was paid to the constable rather than to the clerk of the magistrate court. The attorney general concluded his letter with this paragraph: "When you have clarified the fact situations referred to in this letter of instruction, this office will again direct attention to giving a formal opinion on the questions posed in your inquiry."

It seems apparent that the attorney general did not advise that the *ordinance* under which relator seeks to have the constable directed to perform a ministerial duty was unconstitutional; indeed, he did not deal with any ordinance. And, furthermore, the general's opinion as a whole clearly shows that the conclusions reached were tentative and that any "formal opinion" pertaining to the questions posed would have to await a clarification of facts.

It follows that respondent does not come within either of the asserted exceptions to the general rule and therefore he is precluded from questioning the validity or constitutionality of the ordinance in question. St. Louis County v. Litzinger, supra, 372 S.W.2d 881 [1].

The county seeks to uphold and urges that we affirm the trial court's conclusion of law that the sections of the St. Louis Coun-

ty ordinances here involved are valid and constitutional. It should be plain from what we have said heretofore, we do not reach the question whether the ordinances are constitutional and valid. City of St. Joseph v. Roller, Mo., 363 S.W.2d 609, 612 [6]. Likewise, we do not reach questions suggested by appellant involving the disposition of money which comes into the hands of a St. Louis County constable other than the excess money remaining in his hands by reason of the fact that so-called cost deposits exceeded the amount of earned constable fees.

We have heretofore quoted a portion of the stipulation entered into by the parties by which it was agreed that in the event relator obtained a judgment (a peremptory writ of mandamus), the balance due from respondent at the time of any such judgment would be determined as a result of a proper and complete accounting by respondent to relator. We therefore approve the following portion of the trial court's judgment (as modified by the bracketed insert) which "orders the respondent to provide a complete and proper accounting to relator of such funds in his possession [or which should be in his possession] reserving the right in the Court to order a complete audit of respondent's books and accounts, in the event the Court deems same to be necessary," it being understood that the words "such funds" include only the amounts of money, together with interest thereon, which are or should be in the constable's possession as a result of the fact that the amounts of some so-called deposits for costs made by litigants and their attorneys exceeded the earned constable fees charged against such cost deposits.

The case is remanded with directions to the trial court to have completed, under its supervision and control, the accounting or audit or both as provided above, within the time fixed by the court, and upon the completion of such and the determination thereby of the amount of "such funds" due, the court will issue to respondent constable its peremptory writ of mandamus commanding that respondent forthwith deposit in the county treasury the amount of "such funds" so found to be due.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.