EVERETT SATTERFIELD, APPELLANT, v. MARLIN BRITTON ET AL., APPELLEES, FRED E. BOHY, INTERVENER-APPELLANT.

78 N. W. 2d 817

Filed October 19, 1956. No. 33988.

*Davis & Vogeltanz* and *Manasil & Erickson,* for appellants.

*A. F. Alder,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action by Everett Satterfield, a resident taxpayer of the county of Loup, against the board of commissioners and the county clerk of that county for an injunction to prevent them from making a contract for the construction of a courthouse in Taylor, the county seat of Loup County, and from using any money raised by taxation for that purpose.

The circumstances recited by Everett Satterfield, one of the appellants, and Fred E. Bohy, a resident taxpayer of the county and the intervener and other appellant, as the basis of the relief they seek are identical and are as follows:

The county board of Loup County during a period of time made a levy of taxes upon the property of the taxpayers of the county and collected the taxes thereby assessed from the taxpayers, including the appellants. The fund created thereby is referred to as the special improvement fund or some similar name. The taxpayers did not authorize the levy or collection of the taxes by an election or otherwise. The taxes levied and collected as described are usually referred to as a fund for the building of a new courthouse. The county board advertised for bids for the construction of a building intended to be erected and used when completed as the courthouse of the county. Plans and specifications for the building or an estimate of its cost were not secured by or for the county as the law requires as a condition of making a valid contract for the construction of the con-

templated building. The erection of the courthouse or the expenditure of the money to pay its cost were not budgeted during the fiscal year of 1955-1956 by the county and the expenditure therefor would be illegal and the taking of property of appellants and other taxpayers without due process of law contrary to the Constitution of the United States and the Constitution of Nebraska. Appellees, unless prevented by the court, will enter into a contract on behalf of the county for the building of a courthouse and will expend, and obligate the county to expend funds produced by taxes, illegally without their action in that regard having been authorized by the electors of the county in any manner.

Appellees assert these matters in answer to the claims of appellants:

Taxes were levied and collected from the taxpayers of the county, including appellants, by the proper officials of the county at the time and in the manner specified by law for the years 1946 to 1953, inclusive, for the purpose of providing an improvement fund to defray the expense of the erection of a courthouse for the county. The proceeds of the levies were placed in a fund designated "Improvement Fund." The amount realized and now therein is sufficient to pay the cost of the construction of the contemplated building. The levies made and the taxes collected were not requested by petition of the electors or authorized by an election held for that purpose. The levy made each year as aforesaid did not exceed any limitation or violate any provision of the law. There was no objection to or contest of the levy of taxes made for any of the years to provide funds for the erection of a courthouse by appellants or any other taxpayer of the county. The taxes levied and assessed for that purpose were paid by the taxpayers, including appellants. The amount thereof exceeds the cost of the proposed building, is in the improvement fund of the county, and is held by it for the purpose for which it was levied and collected. The county does not have a

suitable or adequate courthouse. The improvement fund was legally included as an item or part of the county budget for each of the years designated and for the year 1955. The county procured plans and specifications for the proposed building. The county board approved and adopted them, and it directed the county clerk to publish notice as provided by law that bids would be entertained for the erection of the building in accordance with the plans and specifications approved by the county board and on file in the office of the county clerk. Further action of the county to erect the building was interrupted by the commencement of this case.

The claims of appellants made in the petition not admitted by appellees were denied by them and the parts of the answer not conceded to be true were traversed by appellants.

The district court found generally for appellees and rendered a judgment of dismissal of the case. This appeal contests the validity of that adjudication.

The record does not present an issue of fact. The substance of the proof is as follows:

The county board of Loup County made a proposed budget for the fiscal year commencing July 1, 1946, which included an item for a proposed levy of .40 of a mill for a fund designated "Improvement Fund." A summary of the budget containing this item was published with notice that the county board would hold a public hearing at a designated time at the courthouse of the county for the purpose of hearing objections, suggestions, or corrections to the 1946 county budget. The county board at its meeting on August 1, 1946, made levies, including one for the improvement fund, in harmony with the budget except that the levy for the improvement fund was .55 of a mill. There was a levy of taxes for the improvement fund made by the board for each of the fiscal years thereafter to and including the year 1953 by like procedure as the one for 1946 referred to above. The amount of levies for this fund

were not uniform as to amount throughout the period but none of them exceeded 1 mill or violated any legal limitation. There was no petition by electors requesting the county board to levy taxes and no election that authorized it to be done to provide for the expense of constructing a new county building. The county had bonded indebtedness during the year 1946 and thereafter through 1951.

The taxes levied and assessed for the improvement fund for the years 1946 to 1953, both inclusive, were paid by the taxpayers of the county, including appellants, before this case was commenced without objection or protest and there was no legal contest of any of the levies for the improvement fund by anyone before this action was instituted in August of 1955. The proceeds of the taxes were credited to the improvement fund as payment of them was made and the total thereof was sufficient to pay the cost of the construction of the building the county proposed to build. The amount thereof has been continued by the county in the fund and the intention and desire of the county is to use it for the purpose for which it was created. The county has no suitable courthouse. The building being used for that purpose is more than 70 years old, is in very bad condition, and is inadequate and unsuitable for courthouse purposes.

The proposed budget of the county for the fiscal year commencing July 1, 1955, was prepared and published with notice of a public hearing by the county board at a designated time and place at which time the hearing was held. There was no objection made to or change suggested in the proposed budget, it was adopted, and levies were made in accordance with it. The reference to the improvement fund in the budget as published was as follows: Following the designation of the fund was the heading "Requirements" and below it was 29,000.00. Under the words "Cash on Hand 7-1-55" was 26,817.92. Under the words "Misc. Revenue" was 105.80.

Under the words "Amount to be raised by Taxation 1955 Levy" was 2,076.28 and below the words "Proposed 1955 Levies" was .50. The county board adopted what was designated a "RESOLUTION OF ADOPTION AND APPROPRIATION" at the time the proposed budget for 1955 was approved and the levies were made for that year. The following are parts of the resolution:

"Section 1. That the budget for the fiscal year, 7-1-55 to 6-30-56, * * * be, and the same hereby is, adopted as the budget for Loup County for said fiscal year; and that item designated as County Improvement Fund is for construction of a new court house * * *.

"Section 2. That for the expenditures proposed in said budget document as adopted, there is hereby appropriated, by offices, departments, activities, institution and funds, the following amounts, to-wit: * * * For General-Miscellaneous * * * County Improvement Fund $29,000.00. * * *

"Section 3. That the offices, departments, activities and institutions hereinbefore named, are hereby authorized to expend the amounts hereinbefore appropriated to them during the fiscal year beginning July 1, 1955, and ending June 30, 1956.

"Section 4. That the income necessary to finance the appropriations made and expenditures authorized shall be provided out of cash on hand in each fund, revenues to be collected during the fiscal year in each fund, and a tax ley (levy) for each fund as follows: * * * Improvement .50 mills."

A qualified engineer, registered in this state, was employed by the county to prepare plans and specifications for the proposed building, to generally supervise the work, and to perform the services of an engineer and architect necessary in the construction of the building. He prepared plans and specifications for the building, they were approved and adopted by the county, and they were filed and deposited in the office of the county clerk for the use of the public before bids for the con-

struction of the building were invited. The county board caused an advertisement for bids to be published and bids for the construction of the building were made. That was the occasion of the commencement of this litigation. It is conceded that appellants are resident taxpayers of the county. They occupy no other status in or concerning this case.

Appellants attempt to challenge the authority of Loup County to create the fund to defray the cost of construction of a courthouse as the facts existed concerning it. The county board relied upon section 23-120, R. S. 1943. It contained these relevant provisions during the year 1946 and thereafter until it was amended in 1951:

"The county board shall erect or otherwise provide a suitable courthouse, * * *. But no appropriation exceeding fifteen hundred dollars shall be made for the erection of any county building except as hereinafter provided, without first submitting the proposition to a vote of the people of the county at a general election or a special election * * * and the same is ordered by a majority of the legal voters thereon; Provided, that the county board * * * is hereby authorized and empowered, when requested so to do by a petition signed by at least fifty-five per cent of the legal voters in the county, * * * to make an annual levy not exceeding five mills upon the dollar on all taxable property in the county for the purpose of providing a fund for the erection of a courthouse * * *. In counties having no bonded indebtedness, the county board, without the filing of such petition, may levy a tax of not to exceed one and one-half mills per year for not exceeding two years for the purpose of providing a fund for the erection or repair of a jail or courthouse * * *."

The above section was amended in 1951. § 23-120, R. R. S. 1943; Laws 1951, c. 46, § 1, p. 162. The amendment became effective August 27, 1951. It increased the amount the county board had authority to appropriate

for the erection of a county building without an election or a petition of electors from not exceeding fifteen hundred dollars to not exceeding ten thousand dollars and it changed the limitation of "not exceeding two years" in the last sentence of the section to "not exceeding ten years."

It is argued that all of the acts of the county board were invalid because it did not adopt a special resolution or take any other appropriate proceedings establishing a fund for defraying the cost of building a courthouse in specific and clear terms before any attempt was made to levy a tax for that purpose. Appellants say it should have shown clearly that the fund was for the purpose of erecting a courthouse. The statute does not so require. It does not attach to the fund created by such a tax any name or specifically state the manner in which the intention to levy the tax or its purpose shall be expressed. This court passed on a somewhat similar situation in Burlington & M. R. R. Co. v. Cass County, 16 Neb. 136, 19 N. W. 700, and it is there said: "Taxes levied by the county commissioners, upon the receipt of the certificate of the state auditor, to pay the amount due from the county to the hospital for the insane are legal if levied and collected for that purpose, without reference to the name by which the tax is designated in making the levy." The following appears in the opinion: "While the evidence is not as clear as it perhaps might have been, yet it sufficiently appears that this was being done though in rather an irregular way; and the mere fact that this tax was named or denominated the 'insane fund' does not change its character or vitiate the tax, and especially is this true in a case like this where the law does not attach to it any name or specially point out the manner in which the addition to the state tax shall be made." See, also, Burlington & M. R. R. Co. v. Lancaster County, 12 Neb. 324, 11 N. W. 332.

It is asserted by appellants that there was no action

taken by the county to transfer the amount in the improvement fund to a courthouse building fund. This is not supported by any authority. There is no requirement in the law therefor. The money was exacted to pay the cost of a county courthouse. It was placed in a fund designated an improvement fund which was usually referred to as a fund for building a new courthouse, as is evidenced by the allegations of the pleadings of appellants. It is proposed to be used for that precise purpose. This contention is not convincing.

It is true, as appellants assert, that the county had a bonded indebtedness during the year 1946 and thereafter through the year 1951. They contend that all the taxes levied during this period and referred to above were unauthorized and illegal. If this is true, it is unimportant in this case. The proof is that the taxes for the years 1946 to 1953, inclusive, were voluntarily paid by the taxpayers against whose property they were levied and assessed. The appellants were two of the taxpayers of the county and they voluntarily paid the taxes levied against their property. This is not a class action. It is an action by the plaintiff, who is one of the appellants, for himself only. The other appellant intervened in the case for himself only. The legal right of appellants to contest the validity of the taxes levied by the county board described herein for the period stated in any proceeding ceased when appellants voluntarily paid the taxes. It is not shown that either of them made any demand for a return of any of the taxes paid by them. The record shows that they do not have the capacity and are not legally qualified to dispute or contest the validity of the actions of the county board on behalf of the county of which they complain herein. Appellants will not legally gain or lose however this case may be decided.

Section 77-1735, R. R. S. 1943, contains the following: "If a person claim a tax, or any part thereof, to be invalid for the reason that it was levied or assessed for

an illegal or unauthorized purpose, * * * when he shall have paid the same to the treasurer, or other proper authority, in all respects as though the same was legal and valid, he may, at any time within thirty days after such payment, demand the same in writing from * * * the treasurer of the county, * * * for the benefit, or under the authority, * * * of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, * * * for the amount so demanded."

In Monteith v. Alpha High School District, 125 Neb. 665, 251 N. W. 661, it is held: "In the absence of statute, taxes voluntarily paid cannot be recovered back. When a tax imposed is illegal and unauthorized for any purpose, an original action may be brought to recover the tax only by virtue of statutory or constitutional authority. * * * One who seeks to avail himself of the statutory right to recover from a county or school district a tax voluntarily paid must show a substantial compliance with the statute." In the opinion it is said: "There is no evidence in the record to the effect that any of the taxes were paid involuntarily. They were paid by the persons assessed more than three years prior to the date that demands were made for their return. The law is settled in this state that where a person assessed, voluntarily and without compulsion, pays taxes, they cannot be recovered back in an action at law unless there is some constitutional or statutory provision expressly or impliedly giving the taxpayer such right. The only statute applicable to this case is section 77-1923, Comp. St. 1929 (now section 77-1735, R. R. S. 1943), but it provides as a condition precedent to the maintaining of the action that a demand in writing must be made within 30 days after the payment of the taxes. Demand in this case was not made for more than three years after the taxes were voluntarily paid. This clearly was not a substantial compliance with the statute. * * * We are obliged to hold, therefore, that

when plaintiff failed to demand repayment within 30 days from the date of payment of the taxes claimed to be void, * * * he was forever barred." See, also, Dorland v. City of Humboldt, 129 Neb. 477, 262 N. W. 22; Arlington Oil Co. v. Hall, 130 Neb. 674, 266 N. W. 583; State v. Smith, 135 Neb. 423, 281 N. W. 851; Loup River Public Power Dist. v. County of Platte, 144 Neb. 600, 14 N. W. 2d 210.

The court in Dorland v. City of Humboldt, *supra,* commented on the meaning of the words "voluntary payment" in this manner: "When a voluntary payment of special assessments is spoken of, the word 'voluntary' is not used in its ordinary sense, for many such payments are held to be voluntary which are made unwillingly."

The judgment of the district court should be and it is affirmed.

AFFIRMED.