SCHOOL DISTRICT OF MINATARE, COUNTY OF SCOTTS BLUFF, STATE OF NEBRASKA, APPELLANT, v. COUNTY OF SCOTTS BLUFF ET AL., APPELLEES.
202 N. W. 2d 825

Filed December 15, 1972. No. 38468.

Atkins, Ferguson, Nichols & Hahn, for appellant.

Marvin L. Holscher and W. H. Kirwin, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

The plaintiff school district brought this action against Scotts Bluff County, the county treasurer, and the individual members of the board of county commissioners to recover from defendants certain personal property taxes refunded to a taxpayer. The refund involved was paid in part from tax funds held for the credit of plaintiff school district. The district court sustained defendants' demurrers to the petition and dismissed plaintiff's action. We affirm.

Plaintiff's petition alleges that it is a Class III school

district, located wholly within Scotts Bluff County, Nebraska. During 1968, Kern County Land Company, a corporation, owned personal property subject to taxation by the plaintiff and other taxing entities. This property was reported for assessment and taxation to the county assessor of Scotts Bluff County, Nebraska, and personal property taxes were levied against it by various taxing districts including the plaintiff. The taxes were paid to the county treasurer in two installments, $54,986.29 on November 29, 1968, and $54,986.31 on June 26, 1969. Sometime after July 26, 1969, Kern County Land Company filed a claim with the county treasurer for a refund of $4,432. At a regular meeting of the board of commissioners on November 3, 1969, the county board authorized and directed the county treasurer to refund $4,406.19 to Kern County Land Company on the basis of its claim for refund.

The county board did not make a specific finding that the tax refunded or any part thereof was "clearly invalid." The meeting at which the refund was authorized was not preceded by publicized notice of the time and place of the meeting, and the proceedings of the meeting were not published.

On the basis of the resolution of the county board, the defendant county treasurer paid to Kern County Land Company the sum of $4,406.19. Of this amount, $3,443.87 was from funds in the county treasurer's office held for the credit of the plaintiff school district.

No officer or employee of the plaintiff was ever notified of any hearing or action on the claim for refund. No copy of the claim for refund was ever transmitted to the plaintiff school district or any officer thereof, and no notice of the action of the county board was given to the plaintiff prior to the payment of the claim for refund.

A copy of the claim for refund together with an affidavit of a certified public accountant in support of it are attached to the petition and incorporated by refer-

ence. A copy of the resolution of the county board directing the refund is also attached.

The refund claim bears the typewritten date of July 21, 1969. No filing or receipt date appears. The accountant's affidavit is dated June 30, 1969. These documents show that the amount of personal property returned for 1968 personal property taxes by the taxpayer was based on the market value of property recorded in the company books of account and based on its 1967 recorded inventory. Because of defalcations and misappropriations of certain Kern County Land Company employees, the inventory records from which the reported amounts were taken were in error. The value of the personal property listed was less than the value reported on the return in three separate categories, and totaled $145,301. The personal property taxes for 1968 were therefore overpaid $4,432.

The refund claim states that it is made under the provisions of section 77-1734.01, R. R. S. 1943, and within 9 months after payment of the tax as required by that statute. The overpayment was unknowingly made because of erroneous personal property values recorded in the company's books of account, and the erroneous values were not discovered until after the lien date and then through an outside audit.

The resoluton of the county board attached to the petition recites that the Kern County Land Company had requested refund of 1968 personal taxes "due to erroneous reporting * * *" and that the "request for refund was made within the lawful period of time after payment of said taxes" and authorized and directed the refund in the amount of $4,406.19.

Section 77-1734.01, R. R. S. 1943, provides: "In case of payment made of any taxes as a result of a clerical error on the part of taxing officials of the state, county, or other political subdivision of the state, or any taxpayer, the county treasurer is authorized to refund that portion of the tax paid as a result of the clerical error

upon verification by the county assessor or other taxing official, that such error has been made and upon approval by the county board. The tax refunded shall be charged against any undistributed money on hand in such treasurer's office belonging to the political subdivisions which received the benefit from the first payment. A claim for a refund under the provisions of this section shall be made in writing to the county treasurer within nine months after payment of such tax."

Section 77-1735, R. R. S. 1943, provides that any person who claims a tax or any part thereof to be invalid for any reason may "at any time within thirty days after such payment, demand the same in writing from the county treasurer to whom paid. If the same shall not be refunded within ninety · days thereafter, he may sue such county treasurer for the amount so demanded."

The plaintiff's basic contention is that the defendants had no jurisdiction or authority to refund personal property taxes here under either of the two refund statutes on the basis of the facts as set out in the petition. It is contended that the refund claim was filed after July 26, 1969, and therefore was out of time and forever barred under section 77-1735, R. R. S. 1943.

In Satterfield v. Britton, 163 Neb. 161, 78 N. W. 2d 817, this court held that a taxpayer who voluntarily pays an unauthorized and illegal tax and who does not make a demand for its return within 30 days of the time of the payment of the tax as required by section 77-1735, R. R. S. 1943, is forever barred and has no capacity to contest the validity of the tax by any legal proceeding. That case was decided at a time when section 77-1735, R. R. S. 1943, was the only applicable refund section. There is now an additional refund statute which provides a longer period of time for making refund claims under certain conditions. Although there may be constitutional problems as to differing limitation periods,

we shall assume for purposes of this decision that the rule of Satterfield v. Britton, *supra,* is still in effect as to a refund claim grounded on section 77-1735, R. R. S. 1943. Against a challenge by demurrer, the allegations of fact in the petition must be accepted as true. Therefore, the refund claim here was out of time under section 77-1735, R. R. S. 1943, and barred unless it was authorized under some other statutory refund provisions.

The plaintiff also contends that there was no jurisdiction or authority to allow the refund under section 77-1734.01, R. R. S. 1943. Plaintiff's argument is that the term "clerical error" as used in that section refers only to an error in the amount of tax paid, and not to an error in the amount or value of the property returned for assessment. We can find no support for that position in the statute. We point out also that to exclude authority to refund under section 77-1734.01, R. R. S. 1943, would require us to hold as a matter of law that the county board could not have found as a fact that the tax refunded was paid as a result of a clerical error on the part of the taxpayer. That is so, regardless of the interpretation placed upon the term "clerical error."

Section 77-1734.01 was first adopted in 1957. At that time it applied only to "a clerical error on the part of taxing officials of the county" and it had a limitation period of 30 days, identical with section 77-1735, R. R. S. 1943. In 1959, the statute was changed by extending the time for filing a refund claim to 6 months after payment of the tax. In 1961, the statute was again altered to its present form to extend time for filing claims to 9 months, and broaden its application to cover "a clerical error on the part of taxing officials of the state, county, or other political subdivision of the state, or any taxpayer." For the first time, "a clerical error on the part of * * * any taxpayer" became an authorized basis for a refund claim.

In the 1961 Legislature, the introducer of L.B. 256 (§ 77-1734.01), stated that it was "a measure intended

to correct human error." At one point he stated: "As I mentioned before, we overlooked including the taxpayer, which was originally intended, so we have to have the amendment. All this bill does, it just provides for an opportunity to correct human error and provides a limit of 9 months after payment of the tax for making the application for the refund." It was specifically stated that the man the bill was intended to help was the taxpayer, "so it became necessary * * * to insert three words 'or any taxpayer' to have the bill carry out the intent of the bill."

The statute does not limit the "clerical error" to an error made on the return or to an error in the amount of the tax paid. Neither does it limit the "clerical error" to one made in computing the value of the property listed. In view of this legislative history and the language of the statute itself, we do not think the Legislature intended to require proof of what caused the individual to make a clerical error or what motivated his action when he made it. The only requirement of the statute is that some portion of the tax was paid as a result of the "clerical error."

The statute requires that the county assessor or other taxing officer verify the fact that a "clerical error" has been made, and also requires the approval of the county board. No one disputes the fact that an error was made by the taxpayer in its inventory records as a result of which an erroneous and excessive tax was paid. Nevertheless, plaintiff contends that no refund was authorized because the error was not a clerical error within the meaning of the statute. Under the provisions of section 77-1734.01, R. R. S. 1943, the term "clerical error" is not restricted to a clerical error made by a taxpayer on the face of a personal property tax return.

The plaintiff also asserts that section 77-1736, R. R. S. 1943, requires the county treasurer to transmit a copy of the claim for refund to each taxing entity affected,

and that a county board has no jurisdiction or authority to refund any taxes until each taxing entity has had notice of and has passed upon and approved the claim for refund. Section 77-1736, R. R. S. 1943, provides: "When any demand to refund taxes paid is made upon any treasurer, such treasurer shall transmit a copy of the same to the authorities authorized by law to audit and pay accounts against the state, county, city, township, village, or district, as the case may be, who shall pass upon the same as upon any other claim, but no claim for refunding such taxes shall be allowed unless it appears to the satisfaction of such authorities that the tax, or a part thereof, was clearly invalid."

It is quite clear under section 77-1734.01, R. R. S. 1943, that a refund claim under that section requires approval by the county board only. The term "authorities" in section 77-1736, R. R. S. 1943, therefore means the county board where the claim is filed under section 77-1734.01, R. R. S. 1943. In such a case the county treasurer is not required to submit copies of the refund claim to every taxing entity that may be affected, but only to the county board. The county board is the only "authority" whose approval is required for payment of a tax refund claim under section 77-1734.01, R. R. S. 1943. A failure to transmit a copy of the claim to other taxing entities does not deprive the county board of jurisdiction and authority to determine and approve a proper claim.

The plaintiff also contends that the county board has no power to release, discharge, remit, or commute any taxes except for the refunding of taxes paid under section 77-1735, R. R. S. 1943. Section 77-1737, R. R. S. 1943, provides that the county board does not have power to release, discharge, remit, or commute any taxes for any reason whatever. It also provides that the section shall not be construed to prevent the proper authority from refunding taxes, as provided in section 77-1735, R. R. S. 1943, nor to interfere with the powers

of any officer or board sitting as a board of equalization of taxes. It will be noted that section 77-1737, R. R. S. 1943, was last amended in 1955. At that time section 77-1734.01, R. R. S. 1943, did not even exist. Obviously the Legislature did not intend to prevent refunding of taxes under one section of the statutes and not under another, nor to impose individual liability on officers for making refunds authorized under the provisions of one statute but not under another. The provisions of section 77-1737, R. R. S. 1943, should not be construed to prevent the proper authority from refunding taxes as authorized by any specific tax refund statute, whether the authorizing statute be section 77-1735, R. R. S. 1943, or some other.

The remaining contentions of the plaintiff and, to a degree, the contentions already dealt with, constitute a collateral attack on the proceedings by which the county board approved and authorized the payment of the refund claim here. The principles and rules governing the critical issues were enunciated by Roscoe Pound in 1903 in the case of Mitchell v. County of Clay, 69 Neb. 779, 96 N. W. 673. The basic problem is whether the action of the county board in this case was ministerial or quasi-judicial in nature. The Mitchell case stated the rules. When the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi-judicial. Where the officer or official body has no judicial power or discretion as to the interpretation of the law, and the course to be pursued is fixed by law, their acts are ministerial only. In this case there is no question but that the action of the county board in passing upon and approving the claim for refund was quasi-judicial. The allowance of a tax refund claim, where the county board acts quasi-judicially and within the scope of its jurisdiction and authority, is not open to collateral attack in the absence of fraud. See Mit-

chell v. County of Clay, *supra*. In this case there is no allegation of fraud nor of collusion, and the plaintiff was not entitled to attack the refund in a collateral proceeding.

As this court said in Peterson v. George, 168 Neb. 571, 96 N. W. 2d 627: "Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without willfulness, malice, or corruption."

The structure of the property tax laws of this state makes the county board, as well as the county treasurer, the agent for other political subdivisions and taxing entities in connection with many functions of property taxation. Their action here affected other political subdivisions, as well as the plaintiff. Where those actions are taken in good faith and were done within the scope of their jurisdiction and authority, they should be protected from collateral attack by another political and taxing entity as well as from another citizen.

The action of the district court in sustaining the demurrers and dismissing plaintiff's cause of action was correct and the judgment is affirmed.

AFFIRMED.