REQUESTED BY: Donna Karnes, State Tax Commissioner
Should refunds be paid to taxpayers pursuant to Neb.Rev.Stat. §§ 77-1734.01, 77-1735, or 77-1736.04 (Reissue 1981) as a result of the Supreme Court's decision declaring invalid biennial valuation of property mandated by Neb.Rev.Stat. § 77-1301 (Reissue 1981)?
No.
In 1980, the Legislature amended § 77-1301 to provide that all taxable real and personal property should be valued for taxation as of January 1, 1981, and every odd-numbered year thereafter, which valuation should be used as a basis of assessment and valuation until the next regular valuation. On June 22, 1984, the Nebraska Supreme Court held inXerox Corporation v. Karnes, ___ Neb. ___, ___ N.W.2d ___ (1984), that this provision violated the uniformity provision of Article VII, Section 1 of the Nebraska Constitution.
Property was taxed in 1982 on the basis of the values established in 1981, and in 1984 on the basis of the 1983 values. Section 77-1734.01 authorizes the refund of taxes paid as a result of a clerical error on the part of taxing officials or the taxpayer. In School District of Minatarev. County of Scotts Bluff, 189 Neb. 395, 202 N.W.2d 825
(1972), the court held that a mistake in the taxpayer's return caused by misappropriations by its employees, resulting in an overstating of value in its return, was a clerical error under that section. This, we believe, is the type of error contemplated, and the statute does not cover the situation where a provision in a statute is found to be invalid.
Section 77-1735 provides for a taxpayer's filing a claim for a refund of a tax, or a part thereof, claimed to be invalid for any reason. The question that must be answered is whether a method of determining actual value of property which a court later determines to be invalid operates to make the tax, or a part thereof, invalid. In our opinion, it does not.
In Xerox, the court simply held that the method of determining actual value of property by valuation every two years was in violation of the Constitution. It in no way held that a tax imposed under such a system was void, in whole or in part. It is not as though the court had held that some fixed, determinable portion of the tax was invalid, or even excessive. It did not. As a matter of fact, as to some taxpayers, it may be true that biennial assessment resulted in lower, rather than higher, valuations in even-numbered years than was proper, because of intervening inflation or other circumstances. If we were to say that some portion of the tax was invalid because of biennial assessment, what percentage would it be? Obviously, it would be different for every taxpayer, and some taxpayers would owe more taxes (which would be completely uncollectable) because their values had increased.
The Constitution requires taxes to be levied by valuation uniformly and proportionately. Whenever the property of one taxpayer is valued at a higher level than that of another, the Constitution has been violated. That, however, has never been considered to render the tax paid by that taxpayer void, in whole or in part. In Power v. Jones,126 Neb. 529, 253 N.W. 867 (1934), the court said:
 If a tax or assessment is levied without authority of law, it is, of course, void. This sometimes arises when the levy is made without a compliance with the jurisdictional requirements. It might also arise when there was no tax which the plaintiff was in equity bound to pay; as, for instance, where a city attempted to levy taxes upon property outside of its boundaries. If a tax is absolutely void, the taxpayer may, if not guilty of laches, invoke the aid of the court to protect his rights. Touzalin v. City of Omaha, 25 Neb. 817; Rothwell v. Knox County, 62 Neb. 50; Wiese v. City of South Omaha, 85 Neb. 844; Hemple v. City of Hastings, 79 Neb. 723.
 I have been unable to find a decision in Nebraska holding that if an assessment was too high the tax would be absolutely void. In cases where property is assessed at a higher proportion of its actual value than other property similarly located, the taxpayer should first apply to the board of equalization to correct any errors therein. This appears to be a prerequisite to bringing legal action.
Biennial assessment affected virtually every taxpayer in the state in wildly varying degrees. If we were to say that they are entitled to refunds under § 77-1735, tens, or even hundreds of thousands of taxpayers might, theoretically at least, be entitled relief, and a separate determination of value of each item of taxable property on January 1, 1982, and January 1, 1984, might be required. Even this might not achieve uniformity, because pieces of property which had increased in value would not have been increased by the taxing authorities, and § 77-1735 does not provide authority for such increases.
Section 77-1736.04 provides for automatic refunds of taxes which have been declared illegal by a court. In that case, the statute requires the refunding of the tax without the necessity of filing a claim. A moment's reflection will show the impossibility of making refunds under that section.Xerox apparently invalidated biennial valuation of both real and personal property. To apply § 77-1736.04, would require the County Assessor to refigure every personal property tax return, calculating the appropriate depreciation for each item. He would also have to determine whether the value of each piece of real estate had fallen in value between 1981 and 1982, and between 1983 and 1984. If the values had risen, no adjustment could be made.
Section 77-1736.04 contemplates the situation where atax, or a determinable part of it, is illegal. When it is simply a question of the invalidity of the method of determining value, the tax is not illegal. Power v. Jones applies.
If appeals to the district court from actions of the County Board of Equalization for either 1982 or 1984 are pending, the court must take Xerox into account in deciding the case. If not, we are of the opinion that no relief is available.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Ralph H. Gillan Assistant Attorney General
APPROVED:
Paul L. Douglas Attorney General