REQUESTED BY: Linda A. Bauer, Jefferson County Attorney
You have requested our opinion on several questions concerning property taxation which have arisen as a result of a recent judicial decision invalidating an annexation ordinance adopted by the City of Fairbury. You state you desire our views on these issues to aid you in "advis[ing] the County Board on these matters."
By way of background, you relate that the City of Fairbury [City] adopted an ordinance in 1994 which annexed additional area to the corporate limits of the City. Several landowners in the annexed area brought an action against the City challenging the validity of the annexation. During the pendency of the lawsuit against the City, some of the affected landowners paid property taxes (including, of course, taxes resulting from the City levy imposed as a result of the annexation). Other taxpayers sought to pay their taxes "under protest", while still others tendered partial payments (taxes assessed less the amount of the levy from the annexation), which were refused. Some property owners paid no part of their property taxes.
In November, 1997, the Jefferson County District Court entered a judgment declaring the annexation "null and void".[1] In the wake of the District Court's decision, the County has received requests from some taxpayers for a refund of the portion of taxes paid based on the additional levy resulting from the annexation. In addition, you state that property owners who had not previously paid property taxes now desire to pay the "appropriate" amount of tax, which, we assume, means the taxes due less the amount attributable to the levy resulting from the annexation.
In light of the foregoing, you have asked us to address these questions:
1. Whether the refund provisions contained in Neb. Rev. Stat. §§ 77-1734.01 or 77-1735 (1996) are applicable, and, if so, what period of limitations is applicable to refund claims under these provisions;
2. Whether interest should be assessed if partial tax payments were tendered but rejected;
3. Whether interest should be paid on refunds to taxpayers who paid taxes "under protest" on the portion of taxes resulting from the levy made based on the annexation; and
4. Whether, if refunds are granted and taxpayers receive a credit for levies made as a result of the annexation, the County Assessor may then "calculate [the] levy for rural fire protection which would have been assessed absent city assessments and charge taxpayer[s] for [the] same?"
Our conclusions with respect to each of these questions are set forth separately below.
[1] You do not indicate if an appeal was taken from the judgment. We assume that the City did not appeal the judgment, and that it is a final order.
 A. Authority of County Board to Refund Property Taxes.
Your initial question requires consideration of the authority of the County Board to refund property taxes. "It is elementary that a county board has only such powers as the Legislature grants. . . ." State ex rel. Agricultural Extension Service v.Miller, 182 Neb. 285, 287, 154 N.W.2d at 469, 471 (1967). As you recognize in your request letter, there are two statutes authorizing county boards to act on requests for property tax refunds: Neb. Rev. Stat. § 77-1734.01 (1996) and Neb. Rev. Stat. § 77-1735 (1996). As these are the only statutory provisions which could authorize the County Board to refund property taxes in this instance, we will examine, in turn, the potential application of each statute.
 1. Neb. Rev. Stat. § 77-1734.01 (1996) — Refunding of Property Taxes Paid as a Result of "Clerical Error or Honest Mistake or Misunderstanding."
Neb. Rev. Stat. § 77-1734.01(1) (1996) provides:
 In case of payment made of any property taxes or any payments in lieu of taxes with respect to property as a result of clerical error or honest mistake or misunderstanding, of which the taxpayer had no notice, on the part of a county or other political subdivision of the state or any taxpayer, the county treasurer to whom the tax was paid may refund or credit that portion of the tax paid as a result of the clerical error or honest mistake or misunderstanding. Before the refund or credit may be made, the county treasurer shall receive verification from the county assessor or other taxing official that such error or mistake was made, and the claim for refund or credit shall be submitted to the county board. The county board shall pass upon the claim as any other claim made against the county. The refund shall be made in the manner prescribed in section 77-1736.06. The claim for a refund of credit pursuant to this section shall be made in writing to the county treasurer to whom the tax was paid within two years from the date the tax was due. The ordering of a refund or credit by the county board pursuant to this section shall not have a dispositional effect on any similar claim for refund or credit made by another taxpayer. This section may not be used to challenge the valuation of property, the equalization of property, or the constitutionality of a tax. (emphasis added).
The Nebraska Supreme Court construed the scope of the portion of § 77-1734.01(1) permitting the refund of taxes paid as the result of a clerical error in School Dist. of Minatare v. Countyof Scotts Bluff, 189 Neb. 395, 202 N.W.2d 825 (1972). The Court held that a mistake in the taxpayer's return caused by misappropriations by its employees, resulting in an overstating of value on its return, was a clerical error under that section. In discussing the meaning of the term "clerical error" within this provision, the court stated:
 The statute does not limit the "clerical error" to an error made on the return or to an error in the amount of tax paid. Neither does it limit the "clerical error" to one made in computing the value of the property listed. In view of this legislative history and the language of the statute itself, we do not think the Legislature intended to require proof of what caused the individual to make a clerical error or what motivated his action when he made it. The only requirement of the statute is that some portion of the tax was paid as a result of the "clerical error."
 The statute requires that the county assessor or other taxing officer verify the fact that a "clerical error" has been made, and also requires the approval of the county board. No one disputes the fact that an error was made by the taxpayer in its inventory records as a result of which an erroneous and excessive tax was paid. Nevertheless, plaintiff contends that no refund was authorized because the error was not a clerical error within the meaning of the statute. Under the provisions of section 77-1734.01, R.R.S. 1943, the term "clerical error" is not restricted to a clerical error made by a taxpayer on the face of a personal property tax return.
Id. at 401, 202 N.W.2d at 829.
The facts in the instant case do not present a situation where an overpayment of taxes was made based on a "clerical error" on the part of taxpayers or taxing officials within the meaning of § 77-1734.01. The term "clerical error" refers to circumstances where a mathematical or transcription error is made in relation to the records of a taxpayer or tax officials in determining the valuation or assessment of property. A tax levied pursuant to an annexation ordinance which has been declared "null and void" simply does not involve a "clerical error" on the part of a taxpayer or taxing officials. Thus, we believe that the provision allowing a refund of taxes paid as the result of "clerical error" is inapplicable under the facts in this case.
There are no Nebraska Supreme Court decisions discussing the scope of the portion of § 77-1734.01 allowing the refund of taxes paid as a result of "honest mistake" or "misunderstanding." Section 77-1734.01 was amended in 1977 to add the language authorizing the refund of taxes by county treasurers paid as a result of "misunderstanding or honest mistake." 1977 Neb. Laws, LB 245. An examination of the legislative history surrounding the passage of that bill reveals little regarding the Legislature's intent as to the scope of the refund authorization encompassed by the language pertaining to taxes paid as a result of "misunderstanding or honest mistake." The thrust of the testimony proffered by Senator Burrows, sponsor of the bill, reveals the principal impetus behind his sponsorship of the legislation was a situation involving a taxpayer who was unable to obtain a refund of taxes paid on a mobile home which had been mistakenly registered for tax purposes in the wrong county. Committee Hearings on LB 245, 1977 Neb. Laws at 1-3 (Statement of Senator Bill Burrows). This history demonstrates that the Legislature intended this refund provision to be quite limited in scope, and that it would apply in situations where, by "mistake" or "misunderstanding", property was listed or described erroneously for tax purposes. There is no indication that the Legislature intended this to apply in cases where a tax is levied pursuant to a statute or ordinance which is declared void or invalid. Thus, we conclude that the refund provisions of §77-1734.01 provide the County Board with no power to authorize refund claims under the facts presented.
 2. Neb. Rev. Stat. § 77-1735(1) (1996) — Refunding of "Illegal" Property Taxes.
Neb. Rev. Stat. § 77-1735(1) (1996) provides, in pertinent part:
 Except as provided in subsection (2) of this section, if a person makes a payment to any county or other political subdivision of any property tax or any payment in lieu of tax with respect to property and claims the tax or any part thereof is illegal for any reason other than the valuation or equalization of the property, he or she may, at any time within thirty days after such payment, make a written claim for refund of the payment from the county treasurer to whom paid. The county treasurer shall immediately forward the claim to the county board. If the payment is not refunded within ninety days thereafter, the claimant may sue the county board for the amount so claimed. Upon the trial, if it is determined that such tax or any part thereof was illegal, judgment shall be rendered therefor and such judgment shall be collected in the manner prescribed in section 77-1736.06. . . . For purposes of this section, illegal shall mean a tax levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the taxing officials. A person shall not be entitled to a refund pursuant to this section of any property tax paid or any payment in lieu of tax unless the person has filed a claim with the county treasurer or prevailed in an action against the county. If a county refuses to make a refund, a person shall not be entitled to a refund unless he or she prevails in an action against the county on such claim even if another person has successfully challenged a similar tax or payment. (emphasis added).
The Nebraska Supreme Court has held that the statutory refund procedure provided under § 77-1735 (and its predecessors) constitutes "an exclusive remedy for recovering taxes paid where the tax was levied or assessed for an illegal or unauthorized purpose." Scudder v. County of Buffalo, 170 Neb. 293, 297,102 N.W.2d 447, 450 (1960); see also Rawson v. Harlan County,247 Neb. 944, 530 N.W.2d 923 (1995). It has also long been the rule in Nebraska that, "[i]n the absence of statute, taxes voluntarily paid cannot be recovered back." Svoboda v. Hahn, 196 Neb. 21,25, 241 N.W.2d 499, 502 (1976); accord Scudder v. County ofBuffalo; Monteith v. Alpha High School Dist., 125 Neb. 665,251 N.W. 661 (1933). "Generally, a tax is paid voluntarily when it is paid not under compulsion or without threat of seizure or sale of the property of the taxpayer to satisfy the tax in question."Svoboda v. Hahn, 196 Neb. at 25, 241 N.W.2d at 502. "Mere protest alone is not enough to make the payment involuntary."Id. A "condition precedent" to maintaining an action for refund under § 77-1735 is "that a demand in writing must be made within 30 days after the payment of the tax." Satterfield v.Britton, 163 Neb. 161, 170, 78 N.W.2d 817, 822 (1956). "When a taxpayer fails to substantially comply with this 30-day claim requirement and has voluntarily paid the tax, that taxpayer will not be allowed to complain about the tax at a later point in time." Rauert v. School Dist. 1-R of Hall County, 251 Neb. 135,140-41, 555 N.W.2d 763, 767 (1996).
The instant case is quite similar to the situation addressed by the Nebraska Supreme Court in Monteith v. Alpha High SchoolDist., 125 Neb. 665, 251 N.W. 661 (1933). Monteith involved a school district building fund levy which had been imposed annually upon the taxable property of the district for several years prior to a judicial decision enjoining the levy as being void. Id. at 666, 251 N.W. at 662. Following the court decision declaring the levy void, a taxpayer instituted an action seeking a refund of taxes paid under the unlawful assessment. While stating there was "no question" that the levy was void, the Supreme Court nevertheless held the taxpayer could not maintain an action for a refund, because the taxpayer had failed to make a written demand for refund within thirty days after payment of the taxes, as required by statute.[2] Id. at 666-67,251 N.W. at 663. Even though the assessment had not been held void until some three years after the original imposition of the levy, the Court stated: "The statute of limitations commences to run upon the payment of the taxes. The fact that the assessment was void and was not discovered for 3 years cannot change the rule . . . We are obliged to hold therefore, that when plaintiff failed to demand repayment within 30 days from the date of payment of the taxes claimed to be void, . . ., he was forever barred." Id. at 670, 251 N.W. at 663-63.
The tax levied pursuant to the annexation ordinance which has been declared "null and void" seems to clearly fall within the category of an "illegal" tax within the meaning of § 77-1735. As the filing of a claim for refund within thirty days of payment of the tax is a condition precedent to the County Board's approval of a claim for refund under the statute, the Board is without authority to grant refunds to taxpayers absent compliance with this requirement. Thus, taxpayers who paid the taxes at issue and did not file a written demand for refund within thirty days of payment are barred from obtaining refunds pursuant to § 77-1735. This would appear to include persons who you describe as having paid their taxes "under protest". As the Court noted in Svoboda v. Hahn, merely paying taxes "under protest" is not sufficient to render the payment involuntary. It is not clear from your letter what you mean by describing these payments as being "under protest." If you mean that the taxpayer paid the taxes, and filed a written demand for refund within thirty days of payment, this is sufficient to satisfy the requirement of § 77-1735. If, on the other hand, the taxes were paid and the taxpayer in some manner merely indicated the payment was "under protest", this would not be in compliance with the statute's requirements for obtaining a refund of allegedly "illegal" taxes. As to taxpayers who have not yet paid taxes, payment of the full amount of taxes due is required, but the taxpayers may then file a written claim for refund within thirty days of payment, pursuant to § 77-1735. The County Board would have authority to act on those claims which are filed within the time limit prescribed in the statute.
In previous opinions, we have recognized that, in cases where property taxes are alleged to have been levied for illegal or unauthorized purposes, the refund remedy provided under §77-1735 is exclusive, and that only a taxpayer who has made a written demand for refund within thirty days of the date of payment of the tax may obtain a refund. Report of Attorney General 1953-54, 370 (March 30, 1954); Report of Attorney General 1955-56, 66 (April 26, 1955). In a similar circumstance involving a void tax assessment, we recognized the inequity resulting from "the fact that the thirty-day period for demanding refunds ha[d] elapsed with respect to many persons" who timely paid their taxes, thereby precluding them from obtaining refunds, while taxpayers who had not previously paid taxes could make payment and file timely refund claims. Report of Attorney General 1953-54 at 371. We further noted
 the similar situation created by the litigation which resulted in declaring void the Blanket Mill Tax Levy Act in 1952. See Peterson v. Hancock, 155 Neb. 801. In that situation, also, the thirty-day period for making demand for refund had elapsed with respect to a great number of taxpayers who had paid their taxes prior to the decision of the court declaring the levy invalid. Obviously, in such a situation, just as in the present situation resulting from [a judicial] decision, the statutory procedure set forth in section 77-1735 was inadequate to afford the relief to which certain taxpayers should be entitled, in harmony with the decision of the court. In recognition of this unconscionable result, the Sixty-Fourth Session of the Legislature enacted a measure, the sole purpose of which was to permit all taxpayers affected by the decision to make an appropriate claim for refund notwithstanding the thirty-day limitation contained in section 77-1735. See sections 77-1736.01 to 77-1736.03, R.S. Supp., 1953.
Report of Attorney General 1953-54 at 371.
"Similar legislation might be appropriate [in this case] to permit full realization of the effect of the decision" declaring the City's annexation ordinance null and void. As we stated in our prior opinion, "[t]his, of course, is a matter which rests entirely within the discretion of the Legislature, and regarding which a court has no power to grant relief under existing statutes relative to tax refunds." Report of Attorney General 1953-54 at 371.[3]
In sum, the County Board may only authorize refunds to taxpayers who file a written claim for refund of the "illegal" portion of the tax assessment thirty days after payment of the tax. If a taxpayer voluntarily paid the tax, and did not file a timely claim for refund, the Board has no power to provide a refund under § 77-1735. Taxpayers who have not paid their taxes must pay the entire tax, and file a claim for refund within thirty days of payment. The Board would have authority to act on these claims. Legislative action would be necessary to give the Board authority to grant refunds to those persons who paid the entire tax and did not file a timely written refund claim.
 B. Assessment of Interest on Delinquent Taxes Where Partial Payment Was Tendered But Refused.
In situations where property taxes were not paid in a timely manner and became delinquent (including circumstances where taxpayers attempted to tender "partial payments", which were refused by the County Treasurer), you ask whether interest must be assessed on the amount of delinquent taxes.
Neb. Rev. Stat. § 77-207 (1996) provides: "All delinquent taxes shall draw interest at a rate equal to the maximum rate of interest allowed per annum under section45-104.01, as such rate may from time to time be adjusted by the Legislature, from the date they become delinquent, and the interest shall be collected the same as the tax upon which the interest accrues."
Applying the plain language of § 77-207, it appears that interest would be due on the entire amount of taxes which are delinquent. We note that, in a prior opinion, this office concluded that, following a judicial decision holding the Blanket Mill Levy Act unconstitutional, county treasurers could not "accept proferred payments which [did] not include the amount represented by the blanket mill levy." Report of Attorney General 1951-52, 570, 571 (June 25, 1952). We determined that, in spite of the Court's decision, "county treasurers [could not] accept less than the full amount due, and taxpayers [were required to] pay the full amount and then file claims for refunds as provided by statute." Id.[4]
We can find no statutory authority for the County Treasurer to "waive" any portion of interest on delinquent taxes, even under the circumstances present in the instant case. While it could be argued that the imposition of statutory interest on the entire amount of tax is inappropriate, the statutory scheme contemplates that taxpayers seeking to challenge allegedly illegal taxes will timely pay the tax, and file a written refund claim to recover the exaction. Where a property taxpayer fails to pay the tax assessed, or seeks to pay only a part of the tax and is refused, thus allowing the taxes to become delinquent, interest will accrue on the entire amount of the tax under §77-207. A taxpayer ignores the remedy provided under §77-1735 at his or her peril. As noted in response to your initial question, however, persons who have not yet paid their taxes (including, of course, those levied pursuant to the City's annexation ordinance) may make a written claim for refund within thirty days of payment. The Board may, pursuant to § 77-1735, act on these timely filed claims.
 3. Payment of Interest to Taxpayers Paying Taxes "Under Protest".
Your request letter makes reference to taxpayers who assertedly paid their taxes (or, more accurately, the portion thereof resulting from the City annexation) "under protest". You ask whether, if the County Board determines to grant refunds to property owners paying taxes "under protest", interest must be paid on the amount refunded.
As we concluded in response to your first question, tax payments made "under protest" are not considered to be involuntary payments. Taxes voluntarily paid, even if alleged to be illegal, can only be recovered if the requirements of the exclusive refund provision in § 77-1735 are satisfied. Thus, if your reference to payment of taxes "under protest" refers to something other than payment of property taxes and the filing of a written claim for refund within thirty days of payment, as mandated by § 77-1735, the County Board cannot authorize a refund. Obviously, if that is the case, it is unnecessary to reach the question of the payment of interest on property taxes refunded under § 77-1735.
Addressing the larger question of whether interest on property taxes refunded pursuant to § 77-1735 must be paid, it is well established that there is no right to interest as payment for the use of money unless the right has been created by statute or by an express or implied contract. 45 Am.Jur.2dInterest and Usury §§ 34-35 (1969). There is a division of authority, however, on the question of the government's liability for interest on tax refunds. A minority of jurisdictions hold that there is an implied contract between the state and the taxpayer that the state will be liable for interest for the period of time it has held the taxpayer's money. The rule adopted in these jurisdictions requires the state or local government which must refund all or part of a tax to pay interest on the refund, even in the absence of a statute specifically authorizing the payment of interest. E.g. Chicago NorthWestern Ry. Co. v. Schmidt, 85 S.D. 223, 180 N.W.2d 233 (1970);Chicago, S.P.M. O. Ry. Co. v. Mundt, 56 S.D. 530,229 N.W. 394 (1930). See generally Annotation, Right to Interest on TaxRefund or Credit in Absence of Specific Controlling Statute, 88 A.L.R.2d 823, 825-27 (1963).
A clear majority of jurisdictions have rejected the implied contract theory and have held that there is no liability for interest on a tax refund in the absence of a statute that specifically creates a liability for interest. E.g. In re Black,775 P.2d 484 (Wyo. 1989); In re Estate of Purdy, 447 Pa. 439,291 A.2d 93 (1972); Brodsky v. Murphy, 25 N.Y.2d 518,307 N.Y.S.2d 435, 255 N.E.2d 700 (1969); People v. Union Oil Co.,48 Cal.2d 476, 310 P.2d 409 (1957); Columbia Steel Co. v. State,34 Wn.2d 400, 209 P.2d 482, cert. denied 339 U.S. 903 (1949);Schlesinger v. State, 198 Wis. 381, 223 N.W. 856 (1929). Seegenerally Annotation, 88 A.L.R.2d 823, supra, at 835-40. While several rationales have been advanced in support of the rule requiring specific statutory creation of a governmental liability to pay interest on tax refunds, the most compelling rests on recognition that, under the doctrine of sovereign immunity, the state must specifically consent to be held liable for interest. Absent legislation creating such liability, the state is immune from the payment of interest. Columbia Steel Co. v. State,
34 Wn.2d at ___, 209 P.2d at 489. The Nebraska Supreme Court has followed this rule, holding that, in the absence of statutory authority or a lawful contract, the state is not liable for interest on claims against the state. Peterson v. State,114 Neb. 612, 209 N.W. 221 (1926). While Peterson did not involve a claim for refund of taxes, we believe that our Supreme Court, if confronted with the question, would follow the majority rule that interest on tax refunds is not due in the absence of a statute specifically providing for the payment of interest.
The procedure to be followed in making a property tax refund is contained in Neb. Rev. Stat. § 77-1736.06 (1996). Subsection (1) of § 77-1736.06 requires that, within thirty days of "action approving a refund", the county assessor must determine the amount of the refund due, certify the amount to the county treasurer, and send a copy of the certification to the person entitled to the refund. Within thirty days of the date the county assessor certifies the amount of the refund, the county treasurer must notify affected political subdivisions of their share of the refund. The treasurer "shall pay the refund from funds in his or her possession belonging to any political subdivision which has received any part of the tax or penalty being refunded." If sufficient funds are not available, or the political subdivision gives notice to the treasurer that payment of the refund will impose a "hardship" and "create a serious interference with its governmental functions", the treasurer "shall register the refund or portion thereof which remains unpaid as a claim against such political subdivision and shall issue the person entitled to the refund a receipt for the registration of the claim." Id. The refund "shall be satisfied as soon as practicable and in no event later than five years from the date the . . . action approving a refund is entered." Neb. Rev. Stat. § 77-1736.06(2).
The only circumstance in which interest may be paid on a property tax refunded under the procedure set forth in §77-1736.06 is where the claim remains unsatisfied "prior to the sixth next succeeding levy following the . . . action approving the refund. . . ." Neb. Rev. Stat. § 77-1736.06(2)(b) (1996). In that case, "interest shall accrue on the unpaid balance commencing on the sixth next succeeding levy following such . . . action at the rate set forth in section 45-103. . . ."Id. Only in this limited circumstance is interest provided on a property tax refund. Apart from this situation, interest is not allowed on property tax refunds.
4. Imposition of Levy for Rural Fire Protection District.
Finally, you ask whether, if refunds are granted and taxpayers receive a refund or credit for levies made as a result of the invalid annexation, the County Assessor may "calculate [the] levy for rural fire protection which would have been assessed absent city assessments and charge taxpayer[s] [the] same?"
We can find no statutory authority for the County Assessor to act in this manner, or for the imposition, at this time, of a levy by the County Board. Levies for the affected political subdivisions (including those resulting from the City's annexation ordinance) were, we assume, imposed within the time required by statute. After the time for the Board to extend levies on property expired for the tax years at issue, the Board lost all power to impose any "additional" levy, such as contemplated by your question. See Natural Gas Pipeline Co. v.State Bd. of Equal., 237 Neb. 357, 466 N.W.2d 461 (1991) (discussing time when taxes become due and are liens on property, after which time "the collection process cannot be changed" by legislation without violation the prohibition against commutation of taxes in Neb. Const. art. VIII, § 4; Att'y Gen. No. 120, Report of Attorney General 1979-80, 169 (May 21, 1979) (County board without authority to impose levy for sanitation and improvement district after general taxes levied became liens on the property). Thus, the County Board cannot attempt to impose an additional levy of taxes for closed tax years on property in the invalidly annexed area in an attempt to "cure" the situation resulting from the judicial determination that the City's annexation ordinance was "null and void", even if it determines that it has authority to grant refunds to certain taxpayers within the improperly annexed area.
CONCLUSION
In closing, we reiterate our principal conclusion that, based on long-standing Nebraska Supreme Court interpretations of the prerequisites for taxpayers to obtain refunds of "illegal" property taxes, the County Board may authorize tax refunds based on the City's invalid annexation ordinance only to taxpayers who have complied with the requirements of § 77-1735. That statute, as noted, requires a written demand for refund be made within thirty days of the date of payment of the tax. If the procedural requirements of § 77-1735 are not satisfied, there is no authority for the County Board to grant property tax refunds. We have noted that, if this means that certain taxpayers may not be able to obtain a refund, this result could be considered unfair. While we recognize the potential inequities raised by our decision, the law in Nebraska is quite clear, and does not permit us to reach a contrary conclusion.
While it may provide little comfort to those affected by the circumstances giving rise to your request who may be barred from receiving a refund of part of the taxes they have paid, we note that this result could have been avoided if the litigation giving rise to this issue had been pursued in a different manner, and the Legislature had not eliminated a previously existing statute providing for the "automatic" refunding of property taxes after a final judicial decision declaring property taxes "illegal".
Based on our review of the district court judgment declaring the City's annexation ordinance "null and void", and enjoining the City and its officials from enforcing the ordinance, it appears that the suit resulting in this decision was limited to an action against the City and its officials. Apparently, no attempt was made to name the County Board (the entity, as a board of equalization, responsible for levying taxes for the City), as a party to the suit, or to enjoin the levy or collection of taxes resulting from the ordinance. In a prior case involving a challenge to the validity of a tax levied pursuant to an allegedly invalid annexation ordinance, an injunction was sought against not only the City, but also the County (as well as its Treasurer and Assessor), on the ground that the ordinance was unconstitutional and void. Plumfield Nurseries, Inc. v. DodgeCounty, 184 Neb. 346, 167 N.W.2d 560 (1969). This procedure is consistent with Neb. Rev. Stat. § 77-1727 (1996), which provides that injunctions are not authorized to prevent the levy or collection of taxes "unless [a] person has first successfully argued before a court of competent jurisdiction that the tax levied or collected was levied or assessed for [an] illegal or unauthorized purpose." Thus, the property owners affected by the levy resulting from the City's annexation ordinance (including those who filed the suit resulting in the court order declaring the ordinance invalid) could, in addition to seeking such relief, also have sought to enjoin the levy and collection of the tax resulting from adoption of the ordinance. That course of action, however, was not pursued.
We also note that, if such legal action had been undertaken, the Legislature previously provided a mechanism under which a property tax "adjudged and determined" by an appropriate final judgment or court order to be "illegal" would, "without the necessity of filing a claim therefor, be repaid and refunded. . . ." Neb. Rev. Stat. § 77-1736.04 (1986). This "automatic refund" provision, however, was repealed in 1992. 1992 Neb. Laws, Fourth Special Sess., LB 1, § 44.
We raise these points solely to demonstrate that any unfairness resulting from our conclusion could, perhaps, have been averted, had the circumstances been different. We cannot, of course, alter the facts or law, and must base our opinion on the situation presented. We hope that our conclusions aid you in advising your County Board on these issues.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[2] The statute, § 77-1923 (Comp. Stat. 1929), was a predecessor version of the current refund statute governing the recovery of "illegal" taxes, § 77-1735.
[3] There may be some question as to whether the Legislature can validly extend a limitation period to allow persons to file property tax refund claims which are presently barred. SeeDorland v. City of Humboldt, 129 Neb. 477, 484, 262 N.W. 22, 25
(1935) (stating that "the Legislature cannot remove a bar or limitation which has already become complete" in rejecting the contention "that the Legislature [could] set aside the bar of the statute of limitations and permit the recovery of illegal taxes," thus "open[ing] the door" to "permit the recovery of other taxes paid years before."). In any event, it is unnecessary for us to address what action, if any, the Legislature could take to provide a remedy in this case. Addressing any such questions would be inappropriate at this time.
[4] In an informal letter opinion issued in 1985, we indicated that county treasurers could elect to receive and account for partial payments of delinquent real property taxes, but were not required to do so. We further concluded that, pursuant to §77-207, even if such monies were taken and accounted for, interest would continue to accrue on the entire amount of taxes due until the taxes were paid in full. Letter to Daniel E. Bryan, Fillmore County Attorney (October 29, 1985). While you indicate "partial payments" were tendered but rejected by the County Treasurer in the instant case, this was certainly appropriate, as the Treasurer is not required to account for payments of less than the full amount of real property taxes due.